UNITED STATES of America, Plaintiff,

v.

**Andrew PATTERSON, et al., Defendants.**

**No. 95 CR 242.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 2, 1996.

---

**12**

Standish E. Willis, George C. Howard, Jr., Alexander M. Salerno, Law Offices of Alexander M. Salerno, Charles J. Aron, Chicago, IL, for Andrew Patterson.

Michael Gregory Logan, Ashman & Stein, Chicago, IL, Timothy S. Hearst, River Forest, IL, for Robert Patterson.

Scott Jay Frankel, Frankel & Cohen, Chicago, IL, Bradley Jay Harris, Oak Brook, IL, for Tyrone Williams.

Michael B. Mann, Oak Brook, IL, for Terry Clark.

Donald V. Young, Donald V. Young & Associates, Chicago, IL, for Maurice Foster.

Kathleen T. Murdock, United States Attorney's Office, Chicago, IL, for U.S.

### SECOND AMENDED OPINION REGARDING DEFENDANT BAKER'S MOTION TO DISMISS JURY PANEL

GETTLEMAN, District Judge.

Defendant Durwin Baker has moved to dismiss the jury panel in this case on the ground that the court erred in the jury selection process.[1] Prior to, and again at the beginning of jury selection, the court announced that after all challenges—for cause and peremptory—were exercised by the parties[2], the "deck" of cards with the names of the remaining venire members would be shuffled and the first twelve would be chosen as jurors. Defendants and the government would then exercise two more challenges for the alternates and, after those four names were removed from the deck, it would be shuffled again, and the first eight would be chosen as alternates. On the first day of trial, assuming all jurors and alternates showed up, the last two alternates would be excused.[3]

On the third day of the four day jury selection process, counsel for defendant Baker voiced objection to the method announced by the court. This was the first time any party objected to this method. Other defendants disagreed with Baker, pointing out that they had been proceeding with challenges for cause on the assumption that the court would follow the procedures it had announced. It should be noted that, given the number of peremptory challenges allowed by the court, at least 56 venire members were required after all for-cause excusals were allowed.[4] Of the 99 venire members, only 63 remained after for-cause challenges were completed.

The court adopted the modified strike method described above to make the selection process as fair as possible for all parties.

---

1. There are nineteen defendants in this case, in which the government alleges a RICO conspiracy and other crimes. In addition to Baker, some of the other defendants joined the instant motion.

2. Defendants had a total of twenty peremptory challenges to the jury; the government had twelve. Each side had two additional challenges for alternates.

3. Previously the court had announced that there would be six alternate jurors. Because subsequent events required a ten day delay between jury selection and the beginning of the trial, the court reasoned that it might "lose" some of those chosen as jurors or alternates in the interim, and thus increased the number of initial alternates to eight.

4. There were two venire members who were struck by both sides. The court therefore allowed each side one more peremptory strike.

Under the usual procedure in this district, the clerk shuffles all the cards with the names of the venire members prior to voir dire, thus creating an initial list with the names in random order. That order is maintained throughout jury selection so that the list of names remaining after for-cause excusals is in the same order as the venire members were called for individual questions and answers. When exercising peremptory challenges, therefore, a party would know that someone whose name was at the bottom of the list was unlikely to be empaneled. This makes more difficult the task of identifying any possibly improper exercise of peremptory challenges in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny, because, for example, a racially imbalanced jury could be achieved if minority members happen to be low on the list. This potential problem was of particular concern to the court in the instant case, in which all of the nineteen defendants are African American and most of the government's principal witnesses are white.

By shuffling the cards after all excusals, the distribution of the remaining venire members is truly random, and the parties' decisions to exercise their peremptory challenges must take into consideration all of those members, rather than only those whose names were sufficiently high on the list to make it likely they would be in the group to be selected. Moreover, this method impacts the government and the defense equally, and gives each venire member remaining after all excusals an equal chance of being selected as a juror. Most importantly, the court's method preserves and enhances the fundamental common law right of litigants in the federal system to exercise peremptory challenges—a device whose function is to "eliminate extremes of plurality on both sides" of a trial and "to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise." *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965).

Defendant Baker relies principally upon *U.S. v. Ricks,* 776 F.2d 455 (4th Cir.1985). That reliance is misplaced, because the district court's error in *Ricks* resulted from its changing the method by which it would select the jury after defendants had exercised their peremptory challenges. In that case, the trial judge led the defense to believe that the jury would be selected mostly from the top of the list, when in fact the judge made the selection from the middle of the list. See also, *Knox v. Collins,* 928 F.2d 657, 661 (5th Cir.1991) (court's failure to fulfill a promise to defendant to instruct venire on an issue during voir dire violated due process). Having reviewed all of the cases cited by Baker, the court finds that there is not a single case with relevant facts that supports defendant's argument. See, e.g. *United States v. Harper,* 33 F.3d 1143, 1146 (9th Cir.1994) (court's blind strike system was not impermissible because it "permitted the defendants to exercise the full number of peremptory challenges authorized by law, and the defendants were fully informed of the nature of the system").

In the instant case, the court followed the method of selection it announced before and during jury selection. No one was misled. More importantly, to change methods in the midst of jury selection—after most of the for-cause challenges had been raised and ruled upon—would have been grossly unfair to those lawyers and their clients who disagreed with the unexpressed objection later voiced by counsel for Mr. Baker.

Baker's motion to dismiss the jury panel is denied.