124 F.3d 213
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
JESUS ALMAGUER, a/k/a Baby, Defendant-Appellant.
 No. 96-30166.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 8, 1997
Decided Sept. 10, 1997.
 
 Appeal from the United States District Court for the District of Montana, No. CR-95-00051-9-CCL; Charles C. Lovell, District Judge, Presiding.
 Before: WRIGHT, D.W. NELSON, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jesus Almaguer claims that the district court attributed too great a quantity of drugs to him in determining his base offense level under U.S.S.G. § 2D1.1(a)(3). He contends that the district court committed error in basing its findings on Brett Warden's statement that Almaguer sold him 4-5 lbs. (64-80 oz.) of methamphetamine. Almaguer argues instead that just 140.5 oz. were involved in the entire conspiracy, that only 126 oz. came from the Yakima branch (i.e., from him and Micha Gralfs), and, therefore, that the evidence does not support attributing 4 lbs. (64 oz.) to him. Since Gralfs admittedly supplied 96 oz., Almaguer contends that at most 30 oz. (remaining out of the 126 oz.) could be attributed to himself. Moreover, because Warden diluted some of his supply to increase 5 oz. to 11 oz., Almaguer further reduces the total amount attributable to himself to only 23 oz. (Almaguer missubtracts; 30 oz.6 oz. = 24 oz.).
 
 
 3
 The district court relied on the presentencing report's detailed findings in determining how much meth to attribute to Almaguer. That report reveals several problems with Almaguer's calculations. First, more than 126 oz. of meth came from the Yakima branch. Nathan Ashley's initial purchase from Donnie Halcom (who was supplied by Almaguer and Gralfs via Warden) was for 4 oz. in late June, 1995 (Cf. PSR p 15, ER 307). From Ashley's account of "six or seven half-pound purchases" and "at least four trips" for one pound purchases, the district court could have concluded that there were seven 8 oz. and four 16 oz. purchases from late June through mid-July (Cf. PSR p 17, ER 308). On July 27, 1995, there was yet another 8 oz. purchase, followed shortly by a 4 oz. purchase. On August 4, 1995, the day Ashley was arrested, an additional 2 oz. were purchased. (Cf. PSR p 18-19, 27, ER 308, 310). These transactions add up to 138 oz. from Yakima. Ashley also admitted to making two post-arrest meth purchases from Halcom that totalled 5 oz., bringing the total Yakima methamphetamine to 143 oz. This amount converts to 8.9375 lbs., well within the 8.5-9.5 lbs. estimate provided by Brett Warden and agreed to by Halcom and Ashley (Cf. PSR p 65, ER 318). Thus the district court's finding as to the total quantity of meth from Yakima, based on consistent statements from Warden, Halcom and Ashley, is supported by the record.
 
 
 4
 This 143 oz. of meth came from both Almaguer and Gralfs. The district court did not commit clear error in finding that Almaguer sold 64 oz. Because Gralfs confirmed Warden's attribution of 5-6 lbs. to him, Warden's 4-5 lbs. attribution to Almaguer gains credibility. Subtracting the 6 lbs. (96 oz.) Gralfs sold, Almaguer would be responsible for about 47 oz. (143 oz.96 oz.= 47 oz.) of meth. In addition to this 47 oz., however, Almaguer admitted getting 8 oz. from his supplier (out of which he supplied the 4-7 oz. of meth that were found at Warden's residence). Almaguer had yet another 2 oz. in his car when stopped by officers outside Warden's residence on August 30. These 10 oz. are also attributable to Almaguer, making him responsible for at least 57 oz. of meth (Cf. ER 354-57).
 
 
 5
 Since Warden did not distribute all the drugs he got from Almaguer to Halcom (and from there to Ashley), it is not clearly erroneous to conclude that 7 oz. more were distributed elsewhere during the course of the conspiracy (Cf. PSR p 69, ER 318-19). This attribution comports with the overall estimates of Warden, Halcom, and Ashley as to how much meth Almaguer distributed. Even if it did not, 57 oz. and 64 oz. merit the same base offense level. Almaguer's assertion that Ashley could only recall selling about 70 oz. (or 4.375 lbs.) is beside the point. Gralfs admitted supplying 6 lbs. to Warden, which is already greater than 4.375 lbs., so trying to determine the total amount distributed to Warden by figuring backwards from Ashley's distribution chain is methodologically flawed.
 
 
 6
 We decline to decide whether the district court erred in calculating how much marijuana Almaguer distributed, because it does not affect his sentence. Even if Almaguer sold no marijuana at all, he would be in the same base level offense category--as little as 1 kg (about 35 oz.) of meth merits base level 32 (Cf. PSR p 102; ER 325; U.S.S.G. § 2D1.1(c)(4)).
 
 
 7
 In order to challenge the source of information in a PSR, Almaguer must show that it lacks some minimal indicium of reliability. United States v. Monaco, 852 F.2d 1143, 1149 (9th Cir.1988). The district court may approximate drug quantities, and its finding only requires proof by the preponderance of the evidence. United States v. August, 86 F.3d 151, 154 (9th Cir.1996). The district court need only conclude that the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. Id. The evidence at issue here is sufficiently reliable, and the district court's approximations are sound. Moreover, the preponderance of the evidence suggests that Almaguer is responsible for at least as much meth as the PSR computes.
 
 
 8
 Almaguer also appeals the district court's imposition of a 2 point enhancement for being a manager/supervisor under U.S.S.G. § 3B1.1(c). A defendant must have authority over other people in order to qualify for this role enhancement: "Without a showing that the defendant had control over others, even a defendant with an important role in an offense cannot be deemed a manager." United States v. Ramos-Oseguera, 1997 WL 422992, * 9 (9th Cir. July 30, 1997), citing United States v. Hoac, 990 F.2d 1099, 1110-11 (9th Cir.1993). See also United States v. Harper, 33 F.3d 1143, 1150-51 (9th Cir.1994). The district judge made no such findings; therefore, imposing a manager or supervisor enhancement was clear error. We remand for resentencing because "[a]lthough evidence may exist to support an inference that [defendant] occupied a leadership role in this conspiracy, the sentencing judge did not mention it when imposing sentence." Id. at 1151. On remand, the district judge shall not impose an enhancement under U.S.S.G. § 3B1.1 unless he finds that Almaguer managed at least one other person.
 
 
 9
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3