167 F.3d 1267
 99 Cal. Daily Op. Serv. 1196, 99 Daily Journal
D.A.R. 1529
UNITED STATES of America, Plaintiff-Appellee,
v.
Sunthorn YOSSUNTHORN, aka Luong, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Paiboon Mekvichitsang, Defendant-Appellant.
 Nos. 97-50096, 97-50099.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1998.
Submitted Dec. 8, 1998.*
Decided Feb. 17, 1999.
As Amended March 31, 1999.
 
 Lisa M. Bassis, Los Angeles, California, for defendant-appellant Yossunthorn.
 Joseph R. Scarpello, Orange, California, Thomas H. Wolfsen and James M. Crawford, Garden Grove, California, for defendant-appellant Mekvichitsang.
 John S. Gordon, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California; Richard A. Paez, District Judge, Presiding. D.C. Nos. CR-96-00376-RAP-(02), CR-96-00376-RAP(A).
 Before: CANBY and THOMAS, Circuit Judges, and SCHWARZER,** Senior District Judge.
 SCHWARZER, Senior District Judge:
 Defendant Paiboon Mekvichitsang appeals his conviction for conspiracy and attempted possession with intent to distribute heroin. Defendant Sunthorn Yossunthorn appeals his conviction for attempted possession with intent to distribute drugs. In this opinion,[1] we decide that the evidence was insufficient to support the convictions for attempted possession with intent to distribute heroin, and reverse these convictions. We conclude that the evidence was sufficient to support Mekvichitsang's conspiracy conviction and we affirm it.
 FACTS AND PROCEDURAL HISTORY
 The essential facts are not in dispute. In 1992, 1993, and 1995, Zagar Kovittamakron and Throngboon Kulkovit made heroin deliveries both directly to Mekvichitsang and, at Mekvichitsang's direction, to Yossunthorn, whom Mekvichitsang described as "one of his workers." The heroin was sometimes fronted to Mekvichitsang and Yossunthorn, i.e., sold to them on credit. From 1992 to 1995, Mekvichitsang and Yossunthorn purchased quantities of heroin from Kovittamakron and Kulkovit ranging from four ounces to one pound. The price also varied: It was $2,700 per ounce in 1992, and $2,600 per ounce during most of 1995. Once during 1995, Mekvichitsang made only partial payment. On at least one occasion, Mekvichitsang returned heroin to Kulkovit, complaining about its poor quality.
 On December 4, 1995, Kovittamakron told Mekvichitsang that he expected another heroin shipment. Mekvichitsang expressed interest in purchasing some of it. Later that day, Kovittamakron was arrested and he began cooperating with the government. Kovittamakron recorded a series of phone conversations with Mekvichitsang between December 5 and 7, 1995. On December 6, 1995, Kovittamakron called Mekvichitsang and told him that the heroin had arrived. Mekvichitsang suggested they meet at a McDonald's restaurant near his home at noon the following day to make arrangements for the heroin transaction.
 Kovittamakron refused to meet with Mekvichitsang on December 7 as planned. Nevertheless, government agents conducted surveillance and saw Yossunthorn and Mekvichitsang act in ways consistent with conducting countersurveillance. Specifically, at approximately 11:45 a.m., government agents saw Yossunthorn standing in the McDonald's parking lot by his parked car, walking through the parking lot, and looking at cars and people that entered the lot. At about 12:15 p.m., government agents watched as Mekvichitsang drove slowly past the McDonald's, through an adjoining parking lot, and around the block, while looking at the McDonald's parking lot. Mekvichitsang left the area without ever entering the McDonald's lot. Mekvichitsang and Yossunthorn were arrested shortly thereafter.
 Both Mekvichitsang and Yossunthorn were convicted of (1) conspiring to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), during 1992-1995, and (2) attempting to possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), during December 5-7, 1995.[2] Kovittamakron and Kulkovit testified for the government. Yossunthorn was convicted of attempt on a Pinkerton theory of coconspirator liability. See Pinkerton v. United States, 328 U.S. 640, 647-48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).[3]
 Defendants' post-verdict motions for acquittal were denied. The court imposed concurrent sentences on the conspiracy and attempt counts.
 On appeal, Mekvichitsang challenges both his conspiracy conviction and his attempt conviction on the ground that there was insufficient evidence for a rational jury to convict him. Yossunthorn does not challenge his conspiracy conviction. Yossunthorn does challenge both his and Mekvichitsang's attempt convictions, correctly reasoning that if Mekvichitsang's attempt conviction is flawed, so is Yossunthorn's Pinkerton-based attempt conviction.
 DISCUSSION
 I. STANDARD OF REVIEW
 The district court's denial of a motion for acquittal is reviewed de novo.[4] See United States v. Clayton, 108 F.3d 1114, 1116 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 233, 139 L.Ed.2d 165 (1997). There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).
 II. MEKVICHITSANG'S CONSPIRACY CONVICTION
 Only Mekvichitsang attacks the conviction for conspiracy to distribute heroin. To establish a drug conspiracy, the government must prove an agreement to accomplish an illegal objective, and the intent to commit the underlying offense. See United States v. Iriarte-Ortega, 113 F.3d 1022, 1024 (9th Cir.), amended on other grounds by 127 F.3d 1200 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1209, 140 L.Ed.2d 330 (1998). Mekvichitsang challenges the sufficiency of the conspiracy evidence on the grounds that the evidence of his agreement to buy heroin came from inherently unreliable government informants, Kovittamakron and Kulkovit. Yet the credibility of witnesses is a question for the jury unreviewable on appeal. See United States v. Vaccaro, 816 F.2d 443, 454 (9th Cir.1987). Moreover, "[t]he uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or unsubstantial on its face." United States v. Lopez, 803 F.2d 969, 973 (9th Cir.1986). Because the witnesses' testimony was not incredible on its face, and was, in fact, corroborated by taped phone conversations and Mekvichitsang's conduct on the day of the aborted McDonald's meeting, Mekvichitsang's conspiracy conviction must be affirmed.
 III. DEFENDANTS' ATTEMPT CONVICTIONS
 Both Mekvichitsang and Yossunthorn challenge the sufficiency of the evidence for their convictions of attempted possession with intent to distribute heroin. Because Yossunthorn's attempt conviction is based on Pinkerton liability, it is derivative of Mekvichitsang's attempt conviction. Thus, Mekvichitsang's and Yossunthorn's attempt convictions can stand only if the government proved (1) that Mekvichitsang intended to violate 21 U.S.C. § 841(a)(1) (criminalizing drug possession with intent to distribute), and (2) Mekvichitsang took a substantial step toward completing the violation. United States v. Nelson, 66 F.3d 1036, 1042 (9th Cir.1995) ("An attempt conviction requires evidence that the defendant intended to violate the statute, and that he took a substantial step toward completing the violation.").
 There is no question that there was sufficient evidence that Mekvichitsang intended to possess heroin with intent to distribute. Kovittamakron testified that on December 4-7, he and Mekvichitsang discussed Mekvichitsang's interest in purchasing heroin from Kovittamakron's latest shipment. This testimony was corroborated by recorded phone conversations and by Mekvichitsang's conduct driving around the McDonald's restaurant where Mekvichitsang and Kovittamakron had agreed to meet to discuss arrangements to complete the transaction.
 The more critical issue is whether Mekvichitsang's conduct during the period of December 5-7 constituted a substantial step toward acquiring the heroin. As this court has noted in the past, " '[w]hen criminal intent is clear, identifying the point at which the defendants' activities ripen into an attempt is not an analytically satisfying exercise.' " Nelson, 66 F.3d at 1043 (quoting United States v. Harper, 33 F.3d 1143, 1148 (9th Cir.1994)). Nevertheless, the requirements are distinct: "Even when the defendant's intent is clear, his actions must 'cross the line between preparation and attempt' by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances." Id. at 1042 (quoting United States v. Still, 850 F.2d 607, 609 (9th Cir.1988)). The conduct cannot be "mere preparation," see United States v. Buffington, 815 F.2d 1292, 1301 (9th Cir.1987) (citing United States v. Taylor, 716 F.2d 701, 712 (9th Cir.1983)), but must be "[a] substantial step ... strongly corroborative of the firmness of a defendant's criminal intent," see id. (citing United States v. Mandujano, 499 F.2d 370, 376 (5th Cir.1974)).
 The government offers two theories to prove that Mekvichitsang's conduct constituted a substantial step. Neither suffices to uphold Mekvichitsang's attempt conviction.
 A. Countersurveillance
 The government initially argued that by sending Yossunthorn to the McDonald's parking lot and by driving by the McDonald's at the time he had prearranged with a heroin supplier, Mekvichitsang conducted countersurveillance designed to detect law enforcement activity. The government contended that such countersurveillance constituted a substantial step toward possession of heroin with intent to distribute. The government argued that Mekvichitsang drove away from the McDonald's without entering the parking lot because he detected the government agents and/or because he discovered that Kovittamakron had not shown up for the meeting.
 Mekvichitsang's countersurveillance activity is similar to the reconnoitering by the defendants in United States v. Buffington, 815 F.2d 1292, 1295 (9th Cir.1987), where we found insufficient evidence of a substantial step toward bank robbery. In Buffington, the police observed the defendant twice drive slowly by a bank while staring into it, drive to the rear of the bank, enter a nearby store and walk to a window overlooking the bank, leave the store and join his two codefendants as they stood facing the bank. See id. at 1295. We held that the evidence of reconnoitering was insufficient to uphold the attempt convictions: "Not only did appellants not take a single step toward the bank, they displayed no weapons and no indication that they were about to make an entry. Standing alone, their conduct did not constitute that requisite 'appreciable fragment' of a bank robbery...." Id. at 1303. The Buffington court distinguished United States v. Stallworth, 543 F.2d 1038 (2d Cir.1976), where the defendant not only reconnoitered the bank he intended to rob but was armed, had stolen materials for disguises and had moved toward the bank.
 The reasoning of Buffington is bolstered by two other cases reversing attempted bank robbery convictions for lack of a substantial step. In United States v. Still, 850 F.2d 607, 609-610 (9th Cir.1988), the accused attempted bank robber, wearing a wig, was parked in his car with the motor running 200 yards from the bank he admitted he intended to rob. The court reversed the attempt conviction because the facts did not establish "actual movement toward the bank or actions that are analytically similar to such movement." Id. at 610. In United States v. Harper, 33 F.3d 1143, 1147 (9th Cir.1994), the defendant, in preparation for a robbery, had left money in an ATM machine to create a bill trap that would bring service people to the ATM. Reversing the conviction, we stated that "[m]aking an appointment with a potential victim is not of itself such a commitment to an intended crime as to constitute an attempt, even though it may make a later attempt possible." Id. at 1148.
 Had Mekvichitsang intended to rob the McDonald's, under these authorities his countersurveillance activities, without more, would clearly be insufficient evidence of an attempt. A fortiori, Mekvichitsang's act of surveying the McDonald's not to rob it or even to take possession of drugs, but merely to ensure the security of an alleged meeting to make arrangements for some future drug purchase, did not constitute an "appreciable fragment" of the crime of drug possession with intent to distribute and, thus, is insufficient evidence of an attempt. Buffington, 815 F.2d at 1302 (quoting Mandujano, 499 F.2d at 376).
 B. Ordering Drugs from an Established Supplier
 At oral argument, the government argued that Mekvichitsang's substantial step took place before he went to the McDonald's. The government contended that because Mekvichitsang and Kovittamakron had an established relationship in which Kovittamakron fronted heroin to Mekvichitsang at a fixed price, Mekvichitsang's phone call to Kovittamakron ordering heroin constituted a substantial step. As a factual matter, the record does not reflect that Mekvichitsang and his suppliers had agreed on a price for the heroin. Even assuming an agreed price, however, we hold that Mekvichitsang's conduct was not a substantial step toward heroin possession when he ordered drugs from Kovittamakron.
 The government's theory rests on the premise that all major elements of the drug transaction were accomplished and that Mekvichitsang's and Kovittamakron's scheduled McDonald's meeting was merely to arrange ministerial details. Yet the government concedes that Mekvichitsang and Kovittamakron had agreed neither on the quantity of heroin that Mekvichitsang would purchase nor on the delivery time and method.[5] Therefore, even assuming that Mekvichitsang and Kovittamakron had a prior agreement to a fixed price, and that the heroin would be fronted to Mekvichitsang by Kovittamakron, there were essential elements of the transaction yet to be arranged.
 United States v. Smith, 962 F.2d 923 (9th Cir.1992), is instructive. In Smith, we found a substantial step toward possession with intent to distribute cocaine where the defendant arrived at a house where cocaine was picked up by the codefendants, drove off later in another car, and circled the parking lot of the restaurant where the cocaine deal was scheduled to take place before parking there with a shotgun in his lap to fill the role of " 'the heavy in the background.' " Id. at 926. In upholding the conviction, we stated that
 [Smith] did all that he could do to ensure the deal's completion. If the deal had been completed as planned, without any interference, Smith would not have been required to engage in any further acts. In fact, he committed all the steps necessary on his part to the completion of the substantive offense. Under those circumstances, a jury could certainly conclude that Smith's conduct went beyond mere preparation.
 Id. at 930-31.
 Similarly, the defendant cocaine purchaser in United States v. Davis, 960 F.2d 820 (9th Cir.1992), had gone beyond mere preparation. Davis entered into negotiations with an undercover DEA agent to purchase cocaine after price and quantity had been negotiated by a middleman, continued the negotiations, arranged for "his people" to deliver the money, and was on his way to pick up the cocaine when he was arrested. See id. at 823-24, 826.
 In contrast to Smith and Davis, Mekvichitsang had not "committed all the steps necessary on his part to the completion of the substantive offense." Smith, 962 F.2d at 930-31. He merely initiated the transaction by indicating his desire to purchase heroin and scheduling a meeting with Kovittamakron to negotiate a deal. When key elements of the drug deal are incomplete, making an appointment with a known drug supplier, even one who has previously fronted drugs to the defendant at a fixed price, is analogous to the situation in Harper: "Making an appointment ... is not of itself such a commitment to an intended crime as to constitute an attempt, even though it may make a later attempt possible." 33 F.3d at 1148.
 The Seventh Circuit reached the same conclusion in United States v. Cea, 914 F.2d 881 (7th Cir.1990). In Cea, the defendant, who had been negotiating for the purchase of cocaine with undercover agents, was arrested after leaving his home following a phone call in which he had agreed to meet the agents, presumably to pick up the drugs. See id. at 887-88. The court reversed the conviction because the evidence did not establish that a location had been agreed on for the meeting or that the defendant had the money with him to purchase the drugs. While "[t]he government does not have to wait until the transaction is complete[,] ... it needs more evidence of a substantial step...." Id. at 888.
 The government's reliance on United States v. Acuna, 9 F.3d 1442, 1447 (9th Cir.1993) is misplaced. Acuna held that purchasing all necessary precursor chemicals, negotiating for the purchase of glassware, and promising to sell at a fixed price, constituted a substantial step toward manufacturing methamphetamine. See 9 F.3d at 1447. The court found Acuna's case distinguishable from Buffington and Still because "Acuna's conduct [was] strongly corroborative of his intent to manufacture methamphetamine." Id. at 1448. The government argues that Mekvichitsang's ordering heroin from a supplier who had fronted him heroin in the past was also strongly corroborative of his intent. This argument improperly conflates the distinct elements of the crime of attempt. See Nelson, 66 F.3d at 1042-44 ("Even when the defendant's intent is clear, his actions must 'cross the line between preparation and attempt' ....") (quoting United States v. Still, 850 F.2d 607, 609 (9th Cir.1988)). As we said there, "Nelson's expressed eagerness to consummate the [used car trade-in money laundering scheme] and his efforts towards doing so are evidence of intent, rather than evidence [of a substantial step toward the crime of money laundering]." Id. at 1043-44. Mekvichitsang's steps toward the consummation of the offense were manifestly less substantial than those taken by Acuna. Acuna had completed all steps necessary, short of actually manufacturing the methamphetamine. Mekvichitsang, on the other hand, had not agreed to purchase any particular quantity of heroin or arranged for its delivery. In the absence of evidence of a substantial step toward possession of heroin, his attempt conviction must be reversed.
 Because we hold that Mekvichitsang's conviction cannot stand, Yossunthorn's attempt conviction must also be reversed, since it was based solely on Pinkerton liability for the crimes of Mekvichitsang, his coconspirator.
 CONCLUSION
 The convictions and sentences for attempt are REVERSED. This reversal will not affect the sentences for conspiracy, which were concurrent with the sentences for attempt. We REMAND to the district court for entry of corrected judgments.
 AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and 9th Cir. R. 34-4(a)(2)
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The defendants raise numerous other issues on appeal that are addressed by separate Memorandum disposition filed concurrently
 
 
 [2]
 Mekvichitsang was also tried on an aiding and abetting charge, but the jury did not reach a verdict on this count
 
 
 [3]
 Because the jury received only the Pinkerton instructions, we need not reach Yossunthorn's arguments that the evidence was insufficient to convict him of attempt under a straight personal liability theory or an aiding and abetting theory
 
 
 [4]
 The government argues that Mekvichitsang's insufficiency of the evidence claim should be reviewed for plain error, rather than de novo, because Mekvichitsang did not renew his motion for judgment of acquittal at the close of his case or of all the evidence. The record shows, however, that Mekvichitsang joined Yossunthorn's renewal of his motion for judgment of acquittal after the return of the verdict. Under Rule 29(c), a defendant may make a post-verdict motion for judgment of acquittal without having made a similar motion prior to submission of the case to the jury. See Fed.R.Crim.P. 29(c). Because both Mekvichitsang and Yossunthorn argued insufficiency of the evidence to the trial court, they preserved their arguments for appeal and plain error does not apply. Cf. United States v. Smith, 924 F.2d 889, 893-894 (9th Cir.1991) (complete failure to raise insufficiency of the evidence at the district court level warrants plain error review)
 
 
 [5]
 The government argues that because it need not prove any particular quantity of heroin for the substantive crime of possession with intent to distribute heroin, it need not show that quantity was established to prove attempt. This argument misses the point. The fewer elements of a drug transaction are agreed upon, the more remains to be done for the possession to be realized. Thus, the fact that the quantity has not been set between drug supplier and purchaser is relevant to ascertaining whether a substantial step (and thus attempted possession) occurred