**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pedro HERNANDEZ–FRANCO,**
**Defendant–Appellant.**

No. 98–50477.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1999.

Decided Sept. 3, 1999.

Benjamin P. Lechman, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant.

Jennifer A. Schuman and Patrick K. O'Toole, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee.

Before: HALL and T.G. NELSON, Circuit Judges, and WARE,[1] District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Pedro Hernandez–Franco appeals his jury trial conviction and sentence for attempt to transport undocumented aliens in violation of 8 U.S.C. § 1324(a). We have jurisdiction to review appellant's conviction and sentence pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

I.

The events giving rise to the instant case began on the night of January 10, 1998, when Imperial County Sheriff deputies were dispatched to a residence at 223 East Evan Hewes Highway in El Centro, California, in response to reports that a semi tractor-trailer and a white sedan had been seen pulling into the property by a neighbor. Upon arriving at the residence, Deputy Charles Lucas and Reserve Deputy David Michaud discovered a white, eighteen-wheel truck with one of its back doors ajar. Reserve Deputy Michaud observed two to three individuals, and Deputy Lucas observed at least one person in a red shirt or jacket, jump down from the back of the truck and start running.

Reserve Deputy Michaud gave chase to these individuals, and, after losing eye con-

---

1. The Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation.

tact with them, heard noise by a chain link fence that surrounded a cistern. Inside the cistern there were three men, one who was heavyset and wearing a beige jacket, and two thinner, younger individuals. Reserve Deputy Michaud could not identify any of these three individuals, but he did testify that everyone he had seen at the residence had been running away from him, no one had asked him for help, no one appeared scared, no shots were fired, and he saw no weapons in the vicinity. Later testimony at appellant's trial indicated that appellant had been wearing the beige jacket and a black t-shirt at the time of his arrest. Appellant admitted to deputies that he had driven the eighteen-wheel truck to the Evan Hewes residence.

Inside the truck's trailer, deputies found approximately twelve undocumented aliens hiding in produce crates. Nine more undocumented aliens were discovered inside a van that was parked nearby. Twenty-two additional undocumented aliens were inside the house that was on the property. In total, forty-seven undocumented aliens were detained on the grounds of the residence.

On January 21, 1998, appellant was indicted on five counts of transporting and attempting to transport undocumented aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). At appellant's trial, an undocumented alien, Alejandro Garcia–Rodriguez, testified. He stated that he had paid $900 to smugglers to help him enter the United States illegally, and that he had been waiting in the van at the Evan Hewes residence with the understanding that he was to be taken further north. He did not know if he was to be taken further north in the van or appellant's truck.

Also at trial, the defense and prosecution entered a stipulation as to the testimony of four undocumented aliens. All of the aliens testified that they had paid individuals to smuggle them illegally across the U.S.-Mexico border, and that they had congregated at the house on Evan Hewes Highway to be transported to the Los Angeles area. After appellant's truck ar-

rived at the house, all of the aliens were told to leave the house and enter the truck's trailer. One of the aliens, Claudio Solis–Rodriguez, would have testified that a tall, fat man wearing a black shirt was standing near the trailer door as he entered it. Although this description was similar to that of the appellant, none of the aliens could actually identify appellant.

Appellant also testified in his own defense. He stated that on the night of January 10, 1998, he had gone in his truck to Milan Street Cooling in Brawley, California, to pick up a load of lettuce. He did not pick up the lettuce, however, because some of the tires on his truck needed air. As a result, he went to a Texaco station to check his tires and to get some gas. A clerk at the station, Felipe Vargas, testified that he had seen appellant at the gas station at approximately 10:30 p.m. on January 10, 1998.

After appellant got back into his truck, he testified that he started to pull out of the station when a man in the back of the truck's cabin suddenly appeared and put a gun to his head, directing him to follow a grey car that was in front of him. Appellant followed the car to the Evan Hewes house, where he was instructed to get out of the truck and lie face down on the ground. Appellant testified that he had no idea why he was at the house, and although he saw many people around, he did not know that they were illegal aliens. When sheriffs deputies arrived at the house, everyone began to run off, and the man holding appellant at gunpoint allegedly escaped after pushing appellant into the water of the cistern area.

Appellant testified that he told sheriffs deputies immediately after they detained him that he was the driver of the truck and that he had been forced at gunpoint to drive the truck to the house. This testimony was in apparent conflict with the testimony of Reserve Deputy Michaud, who testified that the three people he had arrested at the cistern were quiet and did not ask him for any help. According to

Deputy Edward DeMorst, it was not until DeMorst asked the three individuals who had brought the truck that appellant responded that he had brought the truck, explaining after a brief pause that he had been forced to bring the truck to the Evan Hewes residence at gunpoint.

The jury rejected appellant's testimony, convicting him of all five counts in the indictment on April 27, 1998. At sentencing, the district court adopted the Presentence Report ("PSR"), increased appellant's sentence by six levels because of the number of aliens involved in the offense, and declined to grant appellant an adjustment for having a minor role in the crime.

On appeal, appellant contends that the district court erred in denying his Fed. R.Crim.P. 29 motion for judgment of acquittal because (1) there was not sufficient evidence to establish that appellant had intended to transport undocumented aliens and (2) he had not taken a substantial step towards transporting the aliens, both of which must be shown in order to convict appellant for an attempt to transport aliens in violation of section 1324(a)(1)(A)(ii). Appellant also argues that the district court erred by instructing the jury that appellant must prove his duress defense by a preponderance of the evidence. Finally, appellant contends that the district court should have adjusted his sentence downward because his offense was an attempt crime, that his sentence should not have been increased because of the number of aliens involved, and that he should have received a downward adjustment for his minor role in the offense.

## II.

■ Appellant first argues that the district court erred in denying his motion for acquittal brought pursuant to Rule 29 of the Federal Rules of Criminal Procedure. "The district court's denial of a

motion for acquittal is reviewed de novo." *United States v. Yossunthorn,* 167 F.3d 1267, 1270 (9th Cir.1999). "There is sufficient evidence to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ 8 U.S.C. § 1324(a)(1)(A)(ii) "requires that the defendant knew that the alien was illegal and intended to further the alien's illegal presence in the United States." [2] *United States v. Barajas–Montiel,* 185 F.3d 947, 954 (9th Cir.1999). In general, "[a]n attempt conviction requires [1] evidence that the defendant intended to violate the statute, and [2] that he took a substantial step toward completing the violation." *United States v. Nelson,* 66 F.3d 1036, 1042 (9th Cir.1995). Here, appellant alleges that the government has failed to present sufficient evidence of both requirements.

## A.

■ Appellant first contends that there is insufficient evidence that he intended to transport undocumented aliens in violation of section 1324. We disagree. "[C]ulpable intent ... can be inferred from the defendant's conduct and from the surrounding circumstances." *United States v. Smith,* 962 F.2d 923, 931 (9th Cir.1992).

■ Here, appellant does not contest that he has a commercial trucking license and that he drove his truck to the Evan Hewes residence at night. At that house were at least forty-seven undocumented aliens waiting to be transported north. At the time sheriff's deputies arrived, twelve undocumented aliens had already been

---

2. 8 U.S.C. § 1324(a)(1)(A)(ii) provides criminal sanctions for any person who:

knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

loaded into the truck's trailer and were hiding in produce containers. Solis–Rodriguez's testimony, viewed in the light most favorable to the government, also indicated that a person matching appellant's description was seen at the door in the back of the truck, watching the aliens being loaded. Finally, testimony was introduced at trial that appellant had previously requested to have the night off from his employer.

Although appellant put forward a different version of events, the jury was not required to credit it. *See Yossunthorn,* 167 F.3d at 1270. The fact that no witnesses could identify appellant as having been at the scene is of no moment because appellant did not contest that he had actually been at the Evan Hewes residence while the aliens had been boarding his truck. The jury was entitled to infer from these facts that appellant possessed the requisite intent to violate section 1324.

This situation is not similar to that in *United States v. Buffington,* 815 F.2d 1292 (9th Cir.1987). In *Buffington,* we found that there was insufficient evidence that the defendants had intended to rob a particular bank. The defendants were in the parking lot of a mall that included the bank, and they had engaged in pre-robbery activities, such as wearing disguises and observing the area. But there was insufficient evidence to sustain a finding of intent to rob the bank because "[n]o defendant came within 50 yards of the bank," and "[t]he evidence [was] focused no more on [the bank in question] than on other nearby institutions." *Id.* at 1302. Here, appellant and his truck were at a house containing forty-seven undocumented aliens, with twelve of them already on the truck. There can be no doubt that the focus or location of the intended crime was certain, and *Buffington* is therefore distinguishable from the case at hand.

#### B.

■ Appellant next argues that there is insufficient evidence that he had taken a substantial step in transporting the aliens. Evidence of mere preparation will not support an attempt conviction, rather, there must be proof that appellant has taken " '[a] substantial step ... strongly corroborative of the firmness of a defendant's criminal intent.' " *Yossunthorn,* 167 F.3d at 1271 (quoting *Buffington,* 815 F.2d at 1301) (alterations in original). " '[T]here must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter.' " *Buffington,* 815 F.2d at 1302 (quoting *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir. 1974) (internal quotation omitted)).

■ Appellant drove his truck to the Evan Hewes address late at night, and twelve undocumented aliens had boarded it by the time sheriffs deputies arrived. In addition, there is evidence that appellant was at the trailer door as at least some of the aliens were boarding. If law enforcement officials had not arrived at the time they did, there is every reason to believe that the doors to the truck would have been shut and the truck would have been driven north. The fact that appellant drove his truck to the Evan Hewes address, and that aliens began boarding it, therefore constitutes an "appreciable fragment" of a section 1324 violation.

Appellant relies on several cases where the court reversed attempt convictions of defendants that had extensively planned their bank robbery crimes, but had failed to take a substantial step towards completing them. In *Buffington,* the court held that no substantial step had been taken because the defendants did not make a move to enter the bank, displayed no weapons, and did not indicate that they were about to enter the building. *See Buffington,* 815 F.2d at 1303. In *United States v. Still,* 850 F.2d 607, 610 (9th Cir. 1988), the defendant was sitting in his van with the motor running 200 feet from a bank, wearing a blonde wig. Because the facts did "not establish either actual movement toward the bank or actions that are analytically similar to such movement," the court found that there was

insufficient proof that the defendant had taken a substantial step towards robbing the bank. *Id.* In *United States v. Harper*, 33 F.3d 1143, 1147 (9th Cir.1994), one of the defendants had created a "bill trap" in an automated teller machine that would summon service personnel to fix the machine, at which time the defendants would presumably have been able to overpower the repairman and steal the cash inside the machine. Police at the scene found the defendants sitting in a car in the bank parking lot with duct tape, a stun gun, ammunition, and latex gloves. Two loaded handguns were found nearby. *See id.* at 1145. The court held that there was insufficient evidence to support the defendants' convictions for attempted bank robbery because at the time of the arrest, "[t]he robbery was in the future," and would not happen for up to ninety minutes after the bill trap was created. *Id.* at 1147. The act of creating the bill trap was deemed "equivocal in itself," and did not demonstrate "a true commitment toward the robbery." *Id.*

In contrast to these cases, where it was unclear whether the bank would actually be robbed, the crime here was in the process of being completed. To extend the bank analogy, appellant had already entered the bank and was filling bags with money. At the very least, appellant had delivered a truck that others were filling with illegal aliens, and, the jury could infer, waiting for the truck to be full in order to leave. This conduct constitutes a substantial step corroborating appellant's intent to violate section 1324.

For the same reasons, our decision in *Yossunthorn* is also inapposite. *Yossunthorn* merely held that conducting counter-surveillance activities to ensure the security of a "meeting to make arrangements for some future drug purchase" did not constitute a substantial step to sustain a conviction for attempted possession with intent

to distribute heroin because too many steps remained for the crime to be completed. *Yossunthorn*, 167 F.3d at 1272–73. Here, in contrast, there was much less uncertainty-the aliens were being loaded on appellant's truck. All that remained was for the truck to be full and appellant to drive away. A reasonable observer, viewing appellant's conduct in context, " 'could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.' " *Nelson*, 66 F.3d at 1042 (quoting *United States v. Acuna*, 9 F.3d 1442, 1447 (9th Cir.1993) (quotation omitted)). The district court properly denied appellant's motion for an acquittal.

### III.

■■■ Appellant also contends that the district court erred by instructing the jury that appellant must prove duress by a preponderance of the evidence.[3] He claims that the district court should have instructed the jury that the government had to prove the absence of duress beyond a reasonable doubt. Appellant argues that the government should have born this burden because appellant would not have possessed the requisite mens rea if he had been acting under duress. "Whether a defendant has the burden of proving his duress defense by a preponderance of the evidence is a question of law which we review de novo." *United States v. Meraz–Solomon*, 3 F.3d 298, 299 (9th Cir.1993) (per curiam).

■■■ We have stated that "[i]f a defense negates an element of the crime, rather than mitigates culpability once guilt is proven, it is unconstitutional to put the burden of proof on the defendant." *Walker v. Endell*, 850 F.2d 470, 472 (9th Cir. 1987). This is because "[d]ue process requires that the prosecution prove every

---

**3.** "A defendant must establish three elements in order to present [a duress] defense: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reason-

able opportunity to escape the threatened harm." *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir.1996). The government does not contend that appellant was not entitled to assert a duress defense here.

element of a crime beyond a reasonable doubt." *Id.* (citing *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)). But we have also held that a defense of duress does not necessarily negate the intent required to commit a specific intent offense. *See United States v. Fei Lin*, 139 F.3d 1303, 1307 (9th Cir.1998). In order to determine whether there has been an impermissible shifting of the burden of persuasion to appellant here, we must decide "whether proof of duress necessarily entails disproof" of the mens rea required for a violation of section 1324. *United States v. Dominguez–Mestas*, 929 F.2d 1379, 1382 (9th Cir.1991) (per curiam).

▮▮▮ Attempt crimes, in general, require that appellant specifically intend to commit the underlying offense. *See United States v. Sneezer*, 900 F.2d 177, 179–80 (9th Cir.1990). Moreover, substantive violations of section 1324(a)(1)(A)(ii) also require a showing of specific intent. *See Barajas–Montiel*, 185 F.3d at 954. Thus, in order to obtain a conviction, the government was required to prove that appellant intended to commit the crime of transporting an undocumented alien, which itself required proof "that the defendant knew that the alien was illegal and intended to further the alien's illegal presence in the United States." *Id.*

Duress does not negate the mens rea required for a violation of section 1324(a)(1)(A)(ii). Appellant could intend to drive a truck with undocumented aliens to further their illegal presence in the United States, but act in that manner because someone had a gun to his head. *See Fei Lin*, 139 F.3d at 1307 (" 'Thus, a defendant can restrain another with the intent to inflict injury, in the sense that he knows that his actions will lead to injury or that his purpose is to cause injury, but act in this manner in order to comply with the demands of another.' ") (quoting *Walker*, 850 F.2d at 473). The district court did not err when it placed the burden on ap-

pellant to prove his duress defense by a preponderance of the evidence.

## IV.

▮▮▮ Appellant also attacks the sentence imposed by the district court. Appellant first argues that he was entitled to a three-level reduction in his offense level under U.S.S.G. § 2X1.1 because he was convicted of an attempt crime. Section 2X1.1 states that a defendant should have his base offense level reduced by three levels for attempt crimes "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption." U.S.S.G. § 2X1.1(b)(1). We review the district court's interpretation of the guidelines de novo, and the district court's application of the guidelines to the facts of the case for an abuse of discretion. *See United States v. Fiorillo*, 186 F.3d 1136, 1156 (9th Cir.1999) (per curiam).

Appellant's argument fails because section 2X1.1 does not apply to his offense. By its own terms, section 2X1.1 applies to attempts not covered by a specific guideline. *See* U.S.S.G. § 2X1.1(c)(1) ("When an attempt . . . is expressly covered by another offense guideline section, apply that guideline section."). Here, appellant was convicted of violating section 1324(a)(1)(A)(ii), which expressly prohibits the transportation or *attempted* transportation of undocumented aliens. *See* 8 U.S.C. § 1324(a)(1)(A)(ii) (holding liable any person who "transports . . . or attempts to transport" an alien who has entered the United States in violation of the law). Violations of section 1324(a) are covered by a specific guideline, U.S.S.G. § 2L1.1, which does not provide for a three-level reduction for attempt crimes.

It is true that application note 1 to U.S.S.G. § 2X1.1 does list "[o]ffense guidelines that expressly cover attempts," and that this list does not include section

2L1.1. But other cases have held that the substantive guideline, and not section 2X1.1, apply to attempt crimes that are specifically included in the statute defining the offense. *See United States v. Van Boom*, 961 F.2d 145, 147 (9th Cir.1992) (crime of attempted robbery is included as a violation of 18 U.S.C. § 2113, and is governed by U.S.S.G. § 2B1.1; section 2X1.1 applies to the extent that it is referred to in section 2B1.1); *United States v. Koenig*, 952 F.2d 267, 272 (9th Cir.1991) (crime of attempted fraud is specifically listed in 18 U.S.C. § 1029, and is therefore covered by U.S.S.G. § 2F1.1, not section 2X1.1). In both *Van Boom* and *Koenig*, the substantive guideline provision was not listed in application note 1 of section 2X1.1 as an offense guideline that expressly covered attempts. *See* U.S.S.G. § 2X1.1, application note 1. Appellant's sentence is therefore governed by 2L1.1, and he was not entitled to a three-level reduction under 2X1.1(b)(1).

### V.

Appellant next argues that the district court erred when it increased appellant's offense level by six points because his crime involved an attempt to transport between twenty-five and ninety-nine aliens. *See* U.S.S.G. § 2L1.1(b)(2)(B). We review the district court's factual findings at sentencing for clear error. *See Fiorillo*, 186 F.3d at 1156; *United States v. Kahlon*, 38 F.3d 467, 470 (9th Cir.1994).

Appellant first argues that this adjustment was inappropriate because he was charged and convicted of only five counts of attempting to transport an undocumented alien, not forty-seven. This argument is without merit. The forty-two additional aliens could have been considered in imposing sentence as long as the government established their role by a preponderance of the evidence. *United States v. Fine*, 975 F.2d 596, 600 (9th Cir.1992) (en banc) ("Under the sentencing

guidelines, the proved criminal conduct of the offender, charged or not, generates a measured impact on the sentence."); *United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir.1991) (en banc) (as a general rule, the preponderance of evidence standard applies to findings of fact at sentencing).

Appellant also contends that the government did not prove that appellant planned to transport the forty-two additional aliens by a preponderance of the evidence. Specifically, appellant notes that Garcia–Rodriguez, who was with nine other aliens in a van that was also at the Evan Hewes residence, testified that he did not know how he was to be transported north. Appellant seizes on this to contend that the aliens in the van, at least, may have been transported north in the vehicle they were already in, and not in the truck, which they had never been told to board.

But the evidence clearly established that forty-seven undocumented aliens were detained at the Evan Hewes address, and that even the individuals in the van were waiting to be transported north by some vehicle. Twelve undocumented aliens were already loaded on appellant's truck. A witness, whose testimony was entered into the record by stipulation, would have testified that he was in the Evan Hewes residence "where there were about 40 other people." The witness heard the truck arrive, "and then he and the others in the house were told to get into the trailer in groups of two." This evidence indicates that at least forty undocumented aliens were to be transported in appellant's truck. The number of aliens to be transported by appellant was confirmed by the PSR and its underlying reports. The district court did not commit clear error by enhancing appellant's sentence by six levels for transporting between twenty-five and ninety-nine undocumented aliens.[4]

---

4. We reject appellant's argument that the district court relied on a specific offense characteristic that was merely speculative under application note 2 to U.S.S.G. § 2X1.1 because section 2X1.1 is not applicable to appellant's offense. *See supra,* Part IV.

## VI.

Appellant also contends that he was entitled to a two-level downward adjustment for his minor role in transporting the aliens under U.S.S.G. § 3B1.2. We review the district court's refusal to grant a minor role reduction for clear error. *United States v. Williams*, 185 F.3d 945, 946 (9th Cir.1999) (per curiam). Appellant argues that under the government's own theory of the case, he was a simple driver of the truck, and did not take on any larger role in what was really a complex smuggling operation. Appellant also contends that the government is asserting an inconsistent position, opposing now appellant's request for a minor role reduction while having argued at trial that expert testimony was needed to explain appellant's small role in the larger smuggling operation.

But the government is not asserting any inconsistent positions, and the district court did not commit clear error by declining to grant appellant the reduction. " '[T]his court has consistently stated that a downward adjustment under section 3B1.2 is to be used infrequently and only in exceptional circumstances.' " *Id.* (alteration in original) (quoting *United States v. Davis*, 36 F.3d 1424, 1436 (9th Cir.1994)). Appellant "has the burden of proving by a preponderance of the evidence that he is entitled to a downward adjustment based on his role in the offense." *United States v. Ladum*, 141 F.3d 1328, 1348 (9th Cir. 1998). That appellant may be less culpable than other participants in the crime does not necessarily entitle appellant to an adjustment under section 3B1.2. *See id.* Instead, appellant "must show that he was substantially less culpable than the average co-participant." *Id.*

It is true that there is little in the record to suggest that appellant was involved in making smuggling arrangements for the aliens, or that appellant was somehow a leader of the organization. But the mere fact that appellant was to transport the aliens north does not entitle him to a minor role adjustment. *See Davis*, 36 F.3d at 1436 ("[T]he fact that a defendant acted as a drug courier does not mean his role was minimal or minor.") (internal quotation marks omitted); *United States v. Lui*, 941 F.2d 844, 849 (9th Cir.1991) ("[A] defendant may be a courier without being either a minimal or a minor participant.").

Moreover, nothing indicates that appellant was substantially less culpable than other participants in the offense because he was to be the driver of the truck. Evidence establishes that the undocumented aliens were brought to the Evan Hewes address in small numbers by different individuals. That the record indicates that appellant was to transport most, if not all, of these aliens suggests that he was at least as culpable as many of the other participants in the smuggling ring. The district court did not commit clear error in denying appellant a two-level reduction for having a minor role in the offense.

## VII.

For the foregoing reasons, appellant's conviction and sentence are AFFIRMED.