**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Robert F. LANTZ, Defendant—**
**Appellant.**

No. 01–10113.

D.C. No. CR–98–00147–ECR/RAM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Decided Dec. 20, 2001.

Before BRUNETTI, KLEINFELD, and THOMAS, Circuit Judges.

MEMORANDUM *

Robert Lantz appeals the district court's order denying his motion to suppress evidence seized during a search of his home, as well as the court's decisions at sentencing. We affirm. Because the parties are familiar with the facts and procedural history of the case, we will not recount it here.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## I

■ Lantz raises a number of arguments to support his claim that the search of his home was illegal. However, he waived his right to challenge the scope of the search warrant on appeal. *See* Fed. R. Cr. P. 12(f); *United States v. Wright,* 215 F.3d 1020, 1026 (9th Cir.2000). Although Lantz filed a motion to suppress the Odessa Trust file on those grounds in the district court, he did not contest the seizure of other items that he now argues should have been excluded. This "failure to raise a particular ground in support of a motion to suppress" was the equivalent of not filing a motion at all on those issues, and his claim is therefore precluded under Rule 12(f). *United States v. Restrepo–Rua,* 815 F.2d 1327, 1329 (9th Cir.1987).

■ Lantz also maintains that there was insufficient probable cause to support the search, a claim he preserved for appellate review. We reject this claim because given the totality of the circumstances, the warrant affidavit provided sufficient evidence to support a finding of probable cause. *United States v. Espinosa,* 827 F.2d 604, 610 (9th Cir.1987).

The affidavit contained, *inter alia,* the following evidence: (1) copies of negotiable warehouse receipts signed by Lantz referring to gold stored at a warehouse in Wadsworth, Nevada; (2) surveillance and investigation which indicated Lantz had no legal interest in the warehouse site and that security measures discussed in an assurance letter signed by Lantz did not exist there; (3) the fact that Lantz had signed documents with a purported U.S. customs agent to verify the amounts and purity of gold stored at the warehouse, yet investigation confirmed that the "customs agent" was not employed by the U.S. government; (4) that the FBI had learned of several individuals who were attempting to secure financing using similar warehouse receipts signed by Lantz; (5) that Lantz had assured an undercover FBI agent that the gold was stored at the warehouse; and (6) that numerous phone calls had been placed from Lantz's home telephone to people who were trying to market the warehouse receipts.

## II

■ The district court did not err by increasing Lantz's base offense level pursuant to U.S.S.G. § 2S1.1(b)(2)(C) because it found that the value of the money laundered in the conspiracy exceeded $200,000. The court determined the amount of laundered funds using the payment one victim made to Lantz's co-defendant. Lantz did not receive all of those funds, but he established the amount of the payment and intended to keep that money for himself. Thus, Lantz and his co-defendants laundered the money as part of the same "common scheme or plan as the offense of conviction," and Lantz could reasonably have foreseen that their actions would result in an amount greater than $200,000. *See* U.S.S.G. § 1B1.3(a)(2); *U.S. v. Golb,* 69 F.3d 1417, 1431 (9th Cir.1995).

## III

■ The district court did not err in applying a two-level enhancement to Lantz as an "organizer, or leader, manager or supervisor of one or more participants" in the conspiracy pursuant to U.S.S.G. § 3B1.1. Lantz created the warehouse receipts, he set the amount of lease payments, and he demanded "marketing status" reports from at least one of his co-conspirators. Even a single incident of directing a single person involved in the conspiracy is sufficient evidence to support a two-level enhancement. *United States v. Camper,* 66 F.3d 229, 231 (9th Cir.1995) (citing *United States v. Barnes,* 993 F.2d

680, 685 (9th Cir.1993); *United States v. Maldonado,* 215 F.3d 1046, 1050 (9th Cir. 2000); *See also, U.S. v. Varela,* 993 F.2d 686, 691–92 (9th Cir.1993)).

### IV

The district court did not err in refusing to apply a two-level decrease for minor participation pursuant to U.S.S.G. § 3B1.2. The minor role adjustment is appropriate only if the defendant is substantially less culpable than his co-participants. *United States v. Hernandez–Franco,* 189 F.3d 1151, 1160 (9th Cir.1999) (quoting *United States v. Davis,* 36 F.3d 1424, 1436 (9th Cir.1994)) (internal quotation marks omitted). Lantz's participation was integral to the conspiracy and the court did not abuse its discretion in refusing to decrease his offense level. *U.S. v. Duran,* 189 F.3d 1071, 1089 (9th Cir.1999).

### V

The district court properly construed the rights of third parties under 21 U.S.C. § 853 and Fed.R.Crim.P. 32.2. A preliminary order of forfeiture resolves the rights of the defendant, even if those rights are as yet undetermined, but does not impact the interests of third parties who may claim a right to the forfeited property. *See* Fed. R. Cr. P. 32.2 (advisory committee note). Once a preliminary order is entered by the court, third parties may petition for a hearing to determine their claimed interest in the property. *Id.* That is precisely what occurred in this case, and the petition of one third-party seeking claim to Lantz's forfeited property is still pending before the district court.

**AFFIRMED.**