**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ALEXIS TORRES SIMON,<br>*Defendant-Appellant.* | No. 15-10203<br><br>D.C. No.<br>2:13-cr-00148-<br>JAD-GWF-2<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Submitted En Banc March 22, 2017[*]
San Francisco, California

Filed June 8, 2017

Before: Sidney R. Thomas, Chief Judge, and William A.
Fletcher, Ronald M. Gould, Marsha S. Berzon, Jay S.
Bybee, Carlos T. Bea, Sandra S. Ikuta, Mary H. Murguia,
Jacqueline H. Nguyen, Andrew D. Hurwitz, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Murguia

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY**

### Criminal Law

Affirming a sentence in a case in which the defendant was convicted of conspiracy to commit robbery under the Hobbs Act, and other federal offenses, the en banc court clarified how district courts should apply sentencing enhancements for inchoate offenses.

The defendant received enhancements because the district court applied U.S.S.G. § 2X1.1, which generally covers inchoate offenses like attempt, solicitation, and conspiracy, and under which defendants may receive enhancements as if they had completed the felony, even if they only intended the conduct. Section 2X1.1 does not apply if the "attempt, solicitation, or conspiracy is expressly covered by another offense guideline section."

Overruling *United States v. Hernandez-Franco*, 189 F.3d 1151 (9th Cir. 1999), the en banc court held that a Guideline other than § 2X1.1 "expressly cover[s]" an inchoate offense only if the Guidelines themselves so indicate. The en banc court wrote that a sentencing court should begin with § 2X1.1's Application Note 1, which includes a non-exclusive list of Guidelines sections "expressly" covering inchoate offenses, but the sentencing court also may look to the title and content of other Guidelines provisions or other relevant intra-Guidelines context. The en banc court held that sentencing courts

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

should not, however, rely exclusively on the underlying substantive offense in the United States Code, because statutory language sheds no light on the question whether a Guidelines section expressly covers the offense, for purposes of U.S.S.G. § 2X1.1(c).

Applying this framework, the en banc court held that Hobbs Act robbery conspiracy is not "expressly covered" by § 2B3.1, the Guidelines section covering "Robbery," and that in the absence of a separate Guideline section expressly covering the inchoate offense, the default provisions for inchoate offenses under § 2X1.1 apply to the defendant's sentencing. Because, under § 2X1.1, the defendant's intended conduct is a proper basis for enhancements, the en banc court concluded that the district court did not err in applying enhancements for loss amount, abduction, and carjacking based on conduct that the defendant intended but did not carry out.

---

## COUNSEL

Osvaldo Fumo, Thomas Pitaro, and Dustin R. Marcello, Pitaro & Fumo CHTD., Las Vegas, Nevada, for Defendant-Appellant.

Adam Flake, Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Daniel G. Bogden, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

---

## OPINION

MURGUIA, Circuit Judge:

A jury convicted Defendant Alexis Torres Simon ("Simon") of conspiracy to commit robbery under the Hobbs Act, 18 U.S.C. § 1951, and of other federal crimes. Simon received an enhanced sentence for conduct that he contemplated and intended, but did not carry out: abduction, carjacking, and theft. Simon received these enhancements because the sentencing court applied § 2X1.1 of the United States Sentencing Guidelines (the "Guidelines"),[1] which generally covers inchoate offenses like attempt, solicitation, and conspiracy. Notably, § 2X1.1 does *not* apply if the "attempt, solicitation, or conspiracy is expressly covered by another offense guideline section." U.S. Sentencing Guidelines Manual § 2X1.1(c) (U.S. Sentencing Comm'n 2014). We called the case en banc to clarify how to determine when another Guidelines section "expressly" covers an inchoate offense. We affirm.

## BACKGROUND

Simon and two co-defendants plotted a robbery, but they never had the chance to complete their plan. They had agreed, along with a confidential informant, to abduct the driver of a delivery van and steal the drugs inside. The defendants met in a parking lot across the street from the driver's house with the tools for the planned robbery, including a firearm. Officers then converged on the site and arrested them.

---

[1] The 2014 version of the Sentencing Guidelines was applicable to Simon at the time of his sentencing. All citations in this opinion are to the 2014 version of the Guidelines.

The Government later charged Simon and his co-defendants in a ten-count indictment; some of the counts involved earlier completed thefts. Simon faced eight of the ten counts: conspiracy to interfere with commerce by robbery (count one), attempted interference with commerce by robbery (count two), possession of a firearm in furtherance of a crime of violence (count three), being a felon in possession of a firearm (count six), conspiracy to commit theft from interstate shipment (count seven), and theft from interstate shipment (counts eight, nine, and ten).

After a trial at which the confidential informant was a pivotal witness, a jury convicted Simon on all eight counts. The district court overturned for insufficient evidence Simon's convictions for attempted robbery and firearm possession in furtherance of a crime of violence (counts two and three). The jury also convicted the other two defendants on all counts charged against them; the district court likewise overturned the verdicts on counts two and three against them.

At sentencing, the district court sorted the multiple counts against the three defendants into three "groups." *See* U.S.S.G. § 3D1.2.[2] The "Group 1" offenses concerned the defendants' conspiracy to rob the delivery-van driver. For

---

[2] When a defendant is convicted on multiple counts, the Guidelines instruct the sentencing court first to "[g]roup the counts resulting in conviction into distinct Groups of Closely Related Counts ('Groups')," U.S.S.G. § 3D1.1, with "counts involving substantially the same harm [] together into a single Group." *Id.* § 3D1.2. Then, the court "[d]etermine[s] the offense level applicable to each of the Groups" according to § 3D1.3, and determines the defendant's "combined offense level [] by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated" in § 3D1.4.

Simon, the sole Group 1 offense for which he was convicted was count one, interfering with commerce by robbery, in violation of 18 U.S.C. § 1951 (Hobbs Act robbery conspiracy, or robbery conspiracy).  Because the Group 1 offense had the highest total offense level, 34, the sentence Simon received for the robbery conspiracy was the most important to his overall sentence.

Where an offense involves a conspiracy, attempt, or solicitation, U.S.S.G. § 1B1.2(a) directs a district court to start its Guidelines calculation with U.S.S.G. § 2X1.1.  "When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section," however, the court should instead "apply that guideline section." U.S.S.G. § 2X1.1(c).  Therefore, when some other section of the Guidelines expressly covers a specific inchoate offense—for instance, U.S.S.G. § 2A1.5, "Conspiracy or Solicitation to Commit Murder"—the sentencing court leaves the default § 2X1.1 Guideline behind and looks to the instructions contained in the more specific section of the Guidelines.  To aid the sentencing court in deciding whether to look somewhere other than § 2X1.1, Application Note 1 to § 2X1.1 includes a non-exclusive list of those Guidelines sections "expressly" covering inchoate offenses.  U.S.S.G. § 2X1.1 cmt. n.1 (listing, among other things, U.S.S.G. § 2A1.5, "Conspiracy or Solicitation to Commit Murder").

If no other Guidelines section expressly covers the specific conduct committed, then the district court simply applies U.S.S.G. § 2X1.1, the general inchoate crime provision.  Under § 2X1.1(a), the court begins with "[t]he base offense level from the guideline for the substantive offense."  Thus, a court calculating the sentence for "attempt to commit felony X" starts with the base offense level in the Guidelines section for "felony X."  Section 2X1.1(a) directs

the sentencing court to draw any upward adjustments "from such guideline"—that is, the Guidelines section for the substantive offense—and apply those adjustments for "any *intended offense conduct that can be established with reasonable certainty*" (emphasis added); *see also id.* cmt. n.2 (noting that the relevant offense characteristics for sentencing purposes "are those that are determined to have been specifically intended or actually occurred"). Therefore, where § 2X1.1(a) applies, defendants convicted for an inchoate felony may receive sentencing enhancements as if they had completed the felony, even if they only intended the conduct. This can have a dramatic impact on the sentences defendants receive.

Simon and the Government disagreed below on whether § 2B3.1, the Guidelines section covering "Robbery," "expressly covered" Simon's conviction for *conspiracy* to commit robbery. The parties therefore disagreed on whether § 2X1.1 should apply, and, in turn, whether Simon should receive enhancements for certain conduct he intended but did not carry out: abduction, carjacking, and theft of more than $50,000. If § 2B3.1, for "Robbery," controlled, then the enhancements would apply only to Simon's *completed* conduct. But if § 2X1.1, the default Guidelines section for inchoate offenses, controlled, then enhancements would apply for all conduct Simon specifically *intended*. Seeking to avoid enhancements based on this intended conduct, Simon argued that § 2B3.1 of the Guidelines "expressly cover[s]" conspiracy to commit robbery because 18 U.S.C. § 1951, which criminalizes robbery "affect[ing] [interstate] commerce," also criminalizes conspiracy to commit such robbery. The Government, in response, argued that § 2B3.1 does not "expressly" cover conspiracy to rob, and that the general default inchoate Guidelines section § 2X1.1 should

therefore apply, with the accompanying enhancements for intended conduct.

The district court agreed with the Government, determining that § 2B3.1 did not "expressly" cover conspiracy. The district court therefore followed the general inchoate offense provision, § 2X1.1, and applied enhancements for Simon's intended conduct.

Simon's sentence had the following components[3]:

- a base level of 20, applicable to robbery, drawn from § 2B3.1(a), "Robbery";

- a five-level increase for a conspiracy member possessing a firearm, drawn from § 2B3.1(b)(2)(C), "Robbery," possessing or brandishing a firearm;

- *a four-level increase for abduction*, drawn from § 2B3.1(b)(4), "Robbery," abduction to facilitate commission of the offense;

- *a two-level increase for carjacking*, drawn from § 2B3.1(b)(5), "Robbery," offense involving carjacking;

- a one-level increase for the object of the offense being a controlled substance, drawn from § 2B3.1(b)(6), "Robbery," taking of or object to

---

[3] Italics denote enhancements for intended conduct (or mitigating decreases) that were available because the district court applied § 2X1.1, but would not have been available otherwise.

take a firearm, destructive device, or controlled substance;

- *a two-level increase for an intended loss of $131,000*, drawn from § 2B3.1(b)(7)(C), "Robbery," loss of more than $50,000 and less than $250,000;

- *a three-level decrease for a failure to complete certain necessary acts,* drawn from § 2X1.1(b)(2), "Attempt, Solicitation, or Conspiracy . . . ," reduction for uncompleted conspiracy;

- a two-level enhancement for being a "leader" of the conspiracy, drawn from § 3B1.1(c), "Aggravating Role," organizer, leader, manager, or supervisor; and

- a one-level enhancement for the "unit" added by the total offense level for Simon's Group 3 counts, involving the conspiracy to commit three earlier thefts,[4] drawn from § 3D1.4, "Determining the Combined Offense Level."

In total, Simon's offense level was 34.

If the district court had instead applied § 2B3.1, the Robbery provision, Simon would have had a base offense level of 29. This is because Simon would not have received eight levels of enhancements for his intended conduct of

---

[4] Simon's Group 3 offense level was 26. The Group 3 calculation is not relevant beyond this enhancement, and Simon does not challenge the Group 3 calculation on appeal.

carjacking, abduction, and theft of more than $50,000, but also would not have received a three-level decrease from § 2X1.1(b)(2), for failure to complete certain acts.

Simon had a criminal history score of 11, placing him in Category V. The district court calculated Simon's Guidelines sentencing range at 235–293 months. The probation office recommended a sentence on the lower end of the Guidelines range, and the court varied downward and sentenced Simon to a below-Guidelines sentence of 192 months.

Simon timely appealed, challenging his convictions and his sentence. A three-judge panel previously resolved most of those issues in a memorandum disposition.[5] The remaining issue is whether the district court correctly applied sentencing enhancements based on Simon's intended conduct pursuant to § 2X1.1 of the Guidelines.

## DISCUSSION

We have jurisdiction to review Simon's sentence based on 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. "We review a district court's construction and interpretation of the [Guidelines] de novo and its application of the Guidelines to

---

[5] The panel withdrew submission of the appeals of Simon's co-defendants until the complete resolution of Simon's appeal. The memorandum disposition resolved all conviction-related issues and all other sentencing issues related to Simon's appeal. *United States v. Simon*, 665 F. App'x 597 (9th Cir. 2016), *reh'g en banc granted*, No. 15-10203, 2017 WL 382337 (9th Cir. Jan. 27, 2017). Simon has not sought rehearing of that decision. We have limited our en banc consideration to the outstanding sentencing issue involving Guidelines sections 2B3.1 and 2X1.1. We affirm the district court on the other issues for the reasons given in the memorandum disposition.

the facts for abuse of discretion." *United States v. Popov*, 742 F.3d 911, 914 (9th Cir. 2014).

I

A

Simon argues that the district court erred in applying sentencing enhancements for certain conduct that he intended but never carried out. Whether Simon is correct depends on whether a Hobbs Act robbery conspiracy is "expressly covered by" § 2B3.1 or another Guidelines section. If § 2B3.1 "expressly" covers conspiracy to commit robbery, then Simon is only liable for enhancements based on completed conduct. *See* U.S.S.G. § 2X1.1(c)(1).[6]

Simon's underlying substantive offense was robbery, criminalized under the Hobbs Act if the robbery affects interstate commerce. *See* 18 U.S.C. § 1951; *see also Stirone v. United States*, 361 U.S. 212, 215 (1960). The Guidelines section covering Hobbs Act robbery is § 2B3.1, entitled "Robbery." Simon's conviction, was for an inchoate offense, conspiracy to rob, and not the completed felony. Section 2X1.1—entitled "Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)"—is the default Guideline for such inchoate crimes. The two Guidelines—§ 2X1.1, the general inchoate offense provision, and § 2B3.1, the robbery-specific provision—apply sentencing enhancements in different ways. These enhancements can affect the calculation of the

---

[6] The one exception to this rule, as noted above, concerns Simon's intent to steal a controlled substance, which results in a one-point enhancement under either Guidelines provision. *See* U.S.S.G. § 2B3.1(b)(6) (applying an enhancement where "an object of the offense" was the taking of a controlled substance).

total offense level, and therefore the length of the defendant's Guidelines sentence range.

Generally speaking, under § 2B3.1, many enhancements apply only if certain conduct actually occurred during the robbery.  Section 2X1.1 instead allows enhancements "for any *intended offense conduct* that can be established with reasonable certainty."     U.S.S.G.   § 2X1.1(a)  (emphasis added).  For Simon, the application of § 2X1.1 brought to bear three enhancements for the carjacking, abduction, and monetary loss that he intended but that did not take place. *See* U.S.S.G. § 2B3.1(b)(4), (5) & (7).  If the district court had instead applied the Robbery provision, § 2B3.1, this intended conduct would not have been a basis for an enhancement.

Many Guidelines sections expressly cover conspiracies by their titles or express provisions.  *See, e.g.*, U.S.S.G. §§ 2D1.7 ("Unlawful Sale or Transportation of Drug Paraphernalia;  Attempt  or  Conspiracy"),  2T1.9 ("Conspiracy to Impede, Impair, Obstruct, or Defeat Tax"). Application Note 1 to  the general inchoate offense provision, § 2X1.1, provides that "[c]ertain attempts, conspiracies, and solicitations are expressly covered by other offense guidelines" and lists some Guidelines sections that expressly cover conspiracies, which "include" §§ 2A1.5 ("*Conspiracy* or Solicitation to Commit Murder"); 2D1.1– 1.2 ("Unlawful Manufacturing, Importing Exporting, or Trafficking [of Drugs]; Attempt or *Conspiracy*," and similar); 2D1.5–1.13 (similar); 2D2.1–2.2 ("Unlawful Possession;  Attempt  or  *Conspiracy*");  2D3.1–3.2 ("Regulatory Offenses Involving Registration Numbers . . . Attempt  or  *Conspiracy*");  2H1.1 ("Offenses Involving Individual Rights"); 2M6.1 ("Unlawful Activity Involving Nuclear  Material  . . .  Biological  Agents  . . .  Chemical

Weapons, or Other Weapons of Mass Destruction; Attempt or *Conspiracy*"); and 2T1.9 ("*Conspiracy* to Impede, Impair, Obstruct, or Defeat Tax") (emphasis added). The use of the word "include" suggests that this list is not exhaustive.

Application Note 1 does not list § 2B3.1, the Robbery provision, as an offense Guideline expressly covering conspiracy. The title of § 2B3.1 also does not refer to conspiracy or any other inchoate offense. In fact, nothing about § 2B3.1 implicitly or explicitly covers conspiracies, and nothing else in the Guidelines so suggests.

This was not always the case. For some time, until amendments in 1993, U.S.S.G. § 2E1.5 suggested that § 2B3.1 covered Hobbs Act robbery conspiracies. *See United States v. Amato*, 46 F.3d 1255, 1261 (2d Cir. 1995). But following those amendments, which deleted that reference, "nothing remains in § 2B3.1 (Robbery) to suggest, much less 'expressly' state, that it intends to cover conspiracies." *Id.*

After the 1993 amendments, every other circuit to address the issue has concluded that § 2B3.1, the Robbery provision, does *not* expressly cover Hobbs Act robbery conspiracy, and applied § 2X1.1, the general inchoate offense provision, to a conviction for conspiring to commit a Hobbs Act robbery. *See United States v. McKeever*, 824 F.3d 1113, 1120–22 (D.C. Cir. 2016); *United States v. Gonzales*, 642 F.3d 504, 505 (5th Cir. 2011) (per curiam) (affirming application of § 2X1.1 to Hobbs Act robbery conspiracy); *United States v. Mershon*, 322 F. App'x 232, 236 (3d Cir. 2009) (unpublished) (stating § 2B3.1 does not expressly cover Hobbs Act conspiracy, and therefore § 2X1.1 covers Hobbs Act conspiracy); *United States v. Joost*, 94 F.3d 640, 1996 WL 480215, at *12 (1st Cir. 1996) (unpublished) (endorsing the holding of *Amato*); *Amato*,

46 F.3d at 1261 (holding that because "there is no longer a provision of guidelines directing Hobbs Act conspiracies to § 2B3.1, they are covered by the conspiracy guideline, § 2X1.1").[7]  Under this approach, defendants convicted of conspiracy to commit robbery, like Simon, can receive sentencing enhancements based on all their specifically intended conduct.

B

No published case in this circuit has addressed whether a Hobbs Act robbery conspiracy is "expressly covered by" § 2B3.1.  But one case within this Circuit suggests it is, contrary to the weight of the out-of-circuit authority discussed above.

The defendant in *United States v. Hernandez-Franco* had attempted to transport undocumented aliens in violation of 8 U.S.C. § 1324(a).  189 F.3d 1151, 1153 (9th Cir. 1999).  The Guidelines section for the underlying substantive offense was § 2L1.1, "Smuggling, Transporting, or Harboring an Unlawful Alien."  The question on appeal was whether § 2L1.1 expressly covered attempted transport, or whether § 2X1.1, the general inchoate offense provision, controlled, as the default provision.  The panel analyzed this issue as follows:

> By its own terms, section 2X1.1 applies to attempts not covered by a specific guideline.

---

[7] In 1993, the Eleventh Circuit held that § 2X1.1 does *not* apply to Hobbs Act robbery conspiracy.  *United States v. Thomas*, 8 F.3d 1552, 1564–65 (11th Cir. 1993).  But, as other courts have recognized, that holding simply adopted a Second Circuit decision that the Second Circuit later held was overruled by the 1993 amendments to the Guidelines.  *See Gonzales*, 642 F.3d at 505.

> *See* U.S.S.G. § 2X1.1(c)(1) ("When an attempt . . . is expressly covered by another offense guideline section, apply that guideline section."). Here, appellant was convicted of violating section 1324(a)(1)(A)(ii), which expressly prohibits the transportation or *attempted* transportation of undocumented aliens. *See* 8 U.S.C. § 1324(a)(1)(A)(ii) (holding liable any person who "transports . . . or attempts to transport" an alien who has entered the United States in violation of the law). Violations of section 1324(a) are covered by a specific guideline, U.S.S.G. § 2L1.1, which does not provide for a three-level reduction for attempt crimes.

*Id.* at 1158. Based on this analysis, the panel concluded that § 2L1.1, the substantive guideline, governed the defendant's sentence, and that he could not receive a three-level reduction under § 2X1.1(b)(1), the general inchoate crime provision. *Id.* at 1159. In other words, the panel concluded that "the substantive guideline, and not section 2X1.1, appl[ies] to attempt crimes that are specifically included in the *statute* defining the offense." *Id.* (emphasis added). Although the list in § 2X1.1 Application Note 1 did not include § 2L1.1, the transporting provision, the panel concluded that § 2L1.1 still controlled, based on the underlying statute. *See id.* at 1158–59. Under the *Hernandez-Franco* approach, if the substantive *statute* includes the inchoate offense, then the sentencing court should read the substantive *Guideline* to cover sentencing for the inchoate offense. Thus, *Hernandez-Franco* directs a sentencing court to look to the United States Code to interpret the reach of particular sections of the Guidelines.

If the method used in *Hernandez-Franco* extended to the present appeal, then § 2B3.1, the Robbery provision, would control, because the Hobbs Act expressly prohibits robbery *and* conspiracy to commit robbery. *See* 18 U.S.C. § 1951(a) ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion *or attempts or conspires so to do* . . . shall be fined under this title or imprisoned not more than twenty years, or both." (emphasis added)). Section 2B3.1 of the Guidelines covers robbery in violation of 18 U.S.C. § 1951. U.S.S.G. app. A at 554. Under this approach, Simon would not receive sentencing enhancements for the intended conduct at issue.

The approach in *Hernandez-Franco*, however, conflicts with how this Circuit has otherwise evaluated sentencing for inchoate offenses. In *United States v. Johnson*, the defendant conspired to commit promotional money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). 297 F.3d 845 (9th Cir. 2002). Promotional money laundering includes a "conspiracy" crime, *id.* § 1956(a)(1); *see also id.* § 1956(h) (specifically penalizing conspiracy to violate any offense defined in § 1956), just as the human trafficking statute at issue in *Hernandez-Franco* included "attempt." In *Johnson*, the defendant argued that the reduction in the general inchoate crime provision, § 2X1.1(b)(2), should apply because the substantive offense was not substantially completed. 297 F.3d at 872. Although the panel rejected that argument, it did so only because the defendant failed to carry his burden of showing that his co-conspirators had failed to complete the substantive offense—not because § 1956(a)(1) expressly criminalizes attempted money laundering. *Id.* at 873. The *Johnson* panel did not look to the underlying criminal statute to see whether § 2X1.1 should control.

The approach in *Johnson* and the approach in *Hernandez-Franco* are at least facially inconsistent. Under *Johnson*, the sentencing court confines its inquiry to the Guidelines themselves; under *Hernandez-Franco*, the sentencing court looks to the criminal statute to determine whether another Guideline section "expressly" covers the inchoate offense. Our case law shows continuing tension on the basic approach for sentencing courts to apply. *See, e.g.*, *United States v. Cino*, 73 F. App'x 210, 211 (9th Cir. 2003) (unpublished) (citing to *Hernandez-Franco*, 189 F.3d at 1158, for the proposition that "because 18 U.S.C. § 1951 specifically criminalizes attempt or conspiracy as a substantive crime . . . U.S.S.G. § 2X1.1(b)(2) does not apply.").[8]

To be sure, in this appeal, we might attempt to distinguish Hobbs Act robbery *conspiracy* from the *Hernandez-Franco* approach toward *attempt* crimes. But the Guidelines themselves make no relevant distinction in

---

[8] In *United States v. Temkin*, we held that because "[s]olicitation to commit murder-for-hire is a solicitation offense not specifically covered by its own Guidelines section, "U.S.S.G. § 2X1.1 is the correct starting point." 797 F.3d 682, 693 (9th Cir. 2015); *see also id.* (adding that "no Guidelines section expressly covers solicitation to violate 18 U.S.C. § 1958"). Temkin was convicted of soliciting a crime of violence under 18 U.S.C. § 373, where the crime of violence was a violation of 18 U.S.C. § 1958(a). The statute defining the substantive offense, 18 U.S.C. § 1958(a), itself defined the crime of use of interstate commerce facilities in the commission of murder-for-hire—effectively, solicitation (an inchoate offense). But the *Temkin* panel did not appear to rely on the language of § 1958 in reaching its conclusion.

*Temkin* is arguably compatible with *Hernandez-Franco* because in *Temkin* the statute of conviction only defined the inchoate offense. But, because *Temkin* is consistent with the methodology endorsed in this opinion, we do not overrule *Temkin*.

§ 2X1.1 between attempts and conspiracies. Accordingly, we today clarify how district courts should apply sentencing enhancements for inchoate offenses.

Two considerations counsel strongly in favor of rejecting *Hernandez-Franco* and limiting sentencing courts' consideration to the Guidelines themselves. First, *Hernandez-Franco* occupies a lonely minority position. The Tenth Circuit has discussed *Hernandez-Franco*'s method and flatly rejected it: "We are not persuaded by this reasoning. Such an approach does not comport with a reading of § 2X1.1, which speaks specifically in terms of relevant guideline sections and not underlying statutes." *United States v. Martinez*, 342 F.3d 1203, 1207 (10th Cir. 2003). The D.C. Circuit also has referred to *Hernandez-Franco* negatively. *See McKeever*, 824 F.3d at 1121 (citing *Hernandez-Franco*, 189 F.3d at 1158–59) (rejecting its conclusion that "because statutes like the Hobbs Act expressly mention conspiracies, a court should apply the guideline section listed in the Statutory Index (which, for a Hobbs Act robbery, is § 2B3.1)"). The D.C. Circuit found *Hernandez-Franco* "contrary to the text of § 2X1.1(c), which speaks specifically in terms of relevant guideline sections and not underlying statutes." *Id.* (internal quotation marks omitted) (quoting *Martinez*, 342 F.3d at 1207).

We agree: *Hernandez-Franco* is not consistent with the text of the Guidelines. Section 2X1.1(c)(1) asks whether the inchoate crime "is expressly covered *by another offense guideline section*" (emphasis added). Contrary to that plain text, *Hernandez-Franco* looks instead to whether the *statute* "expressly cover[s]" the inchoate crime. 189 F.3d at 1158. *Hernandez-Franco* goes outside of the Guidelines, when the Guidelines instruct courts to stay within its confines.

The *Hernandez-Franco* approach is also in tension with the basic premise of the Guidelines. Congress intended the Guidelines to advance its goals for sentencing federal crimes, and for the Sentencing Commission to draft and update the Guidelines with those ends in mind. *See Rita v. United States*, 551 U.S. 338, 347–50 (2007). "[T]he Guidelines should be the starting point and the initial benchmark," and "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). However, the Guidelines also allow the district court appropriate discretion: the district court should consider the arguments of the parties, and "not presume that the Guidelines range is reasonable." *Id.* at 50. The district court remains able to vary from the Guidelines, which are advisory, but must, as with all sentencing decisions, provide a reasoned justification for the decision. *See id*.

## C

Simon's challenge to his sentencing enhancements rests on *Hernandez-Franco*. That decision is not a sound cornerstone, and we will not build any further on its foundation. We today overrule *Hernandez-Franco*, and hold that a Guideline other than § 2X1.1 "expressly cover[s]" an inchoate offense only if the Guidelines themselves so indicate.

When a sentencing court must determine whether another Guidelines section "expressly cover[s]" an inchoate offense, a sentencing court should begin with Application Note 1 to § 2X1.1, but also may look to the title and content of other Guidelines provisions, or other relevant intra-Guidelines context. Sentencing courts should not, however, rely exclusively on the underlying substantive offense in the United States Code, because statutory

language sheds no light on the question of whether a Guidelines section expressly covers the offense, for purposes of § 2X1.1(c).

## II

Section 2B3.1, the Guidelines section for robbery, does not "expressly" cover robbery conspiracies. Application Note 1 to § 2X1.1, § 2B3.1's title and express provisions, and all other relevant Guidelines text offer no indication that § 2B3.1 covers conspiracies. Therefore, Hobbs Act robbery conspiracy is not "expressly covered" by § 2B3.1. In the absence of a separate Guideline section expressly covering the inchoate offense, the default provisions for inchoate offenses under § 2X1.1 apply to Simon's sentencing. *See* § 2X1.1(c). Under § 2X1.1, moreover, Simon's intended conduct is a proper basis for the enhancements the district court applied. The district court therefore did not err in applying enhancements for loss amount, abduction, and carjacking to Simon's sentence based on conduct that he intended but did not carry out.

## CONCLUSION

The district court correctly applied § 2X1.1, the general provision for inchoate offenses, to determine Simon's sentence and relevant sentencing enhancements because § 2B3.1, the Robbery provision, does not expressly cover conspiracies under the Hobbs Act. We affirm the sentence of the district court.

**AFFIRMED.**