RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

 *v.*

EDUARDO RIOS VELASQUEZ,

    *Defendant-Appellant*.

No. 21-4106

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:17-cr-00342-2—Benita Y. Pearson, District Judge.

Argued: June 14, 2023

Decided and Filed: August 28, 2023

Before: ROGERS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Richard P. Kutuchief, THE KFARM, Coventry Township, Ohio, for Appellant.
Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.
**ON BRIEF:** Richard P. Kutuchief, THE KFARM, Coventry Township, Ohio, for Appellant.
Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. Defendant Eduardo Velasquez was convicted of conspiracy to use interstate commerce to commit murder-for-hire, in violation of 18 U.S.C. § 1958(a). After a remand from our panel, the only substantial remaining issue is whether the district court erred by denying Velasquez a sentencing guideline reduction under U.S.S.G. § 2X1.1(b)(2), which provides for a three-level decrease "unless the defendant or a co-conspirator completed [or

was about to complete] all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense[.]"  On remand, the district court denied the three-level reduction, based upon its determination that Velasquez completed the underlying offense of using interstate commerce with intent to commit murder-for-hire.  Denial of the § 2X1.1(b)(2) reduction was correct, however, for a more fundamental reason.  The cross-reference in U.S.S.G. § 2X1.1(c) provides that when the "conspiracy is expressly covered by another offense guideline section, apply that guideline section."  The guideline that covers Velasquez's case—as we held in our previous opinion—is U.S.S.G. § 2A1.5, which expressly covers conspiracy to commit murder.  U.S.S.G. § 2X1.1(b) is accordingly not applicable to Velasquez in the first place.

The facts and procedural history are set forth in some detail in our previous opinion.  See *United States v. Cordero, et al.*, 973 F.3d 603, 608–611 (6th Cir. 2020). The parts most relevant to the present appeal are summarized here.

Velasquez was out of prison on probation in 2017; he had spent eleven years together with co-defendant Angel Cordero when they were cellmates in prison, and the two maintained a close bond.  During his incarceration, Cordero met Marc King, another inmate who lived in the same dorm, and they cooperated in various criminal schemes while they were in prison.  King was introduced (virtually) to Velasquez and engaged with him in fraudulent activity.  Cordero eventually asked King if he would be able to locate the address of a woman named Tyra Goines.  Cordero said that Velasquez wanted to kill Goines.  To convince King of Cordero's reasons for why Velasquez wanted to kill Goines, Cordero called (by cellphone) Velasquez, who explained that he and someone else were looking for Goines and that the private investigator they had hired was not able to find her.  Cordero told Velasquez that King would be able to help.  Cordero proceeded to ask Velasquez, "[i]f you find her, what are you going to do [?]" to which Velasquez responded, "I'm going to tie her up and get rid of the bitch."  Upon learning that Velasquez wanted to kill Goines, King contacted his attorney to inform the Government of the murder scheme, hoping to receive a reduced sentence in return.  Meanwhile, King had no difficulty locating Goines's address, for which Cordero and Velasquez promised to pay King.

Seeking to receive a sentence reduction for his cooperation, King met with government agents, who obtained some of Cordero's phone records. Using a recording device, King recorded a series of conversations, some covering the alleged murder for hire. To prompt Cordero about the murder plot, King pretended to be worried that he would not be paid because Velasquez would be afraid to act. Cordero denied that Velasquez was scared. Cordero then appeared to describe what Velasquez planned to do: Velasquez would be paid by "his man" to find Goines's address and would follow up with an offer to kill Goines for payment.

Soon after receiving Goines's address from Cordero, Velasquez texted Cordero, telling Cordero that he had plugged Goines's address into his phone's GPS and had left to go scope out the residence. Cordero is then heard on tape saying, "[h]e see that bitch he might throw her in the trunk right now." When King asked about how much Velasquez would be paid to commit the murder, Cordero responded, "[d]epend on what he's gonna do, he's gonna bury the bitch in his backyard, I don't know." Cordero estimated Velasquez would receive more than $20,000, but then stated, "I don't know what they gonna do to be honest." Cordero also graphically described how he would commit the murder were he able to. Velasquez was arrested on July 7. On his phone were text messages which suggested that a person named Leon Stone had hired Velasquez to murder Goines.

A jury convicted Velasquez and Cordero of conspiracy to use interstate commerce to commit murder for hire in violation of 18 U.S.C. § 1958(a), and conspiracy to distribute cocaine in violation of 21 U.S.C. § 841. The district court calculated Velasquez's offense level to be 37. This offense level was arrived at by looking first at U.S.S.G. § 2E1.4(a)(2) ("Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire"), which says to apply "the offense level applicable to the underlying unlawful conduct" if greater than 32. The offense level for the "underlying unlawful conduct" was in turn provided by U.S.S.G. § 2A1.5 ("Conspiracy or Solicitation to Commit Murder"), which specified a base level of 33, increased by four levels to 37 because "the offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder[.]" U.S.S.G. § 2A1.5(b). Velasquez objected at the sentencing hearing on the basis that he should not have been subject to the four-level enhancement because he did not offer anything of pecuniary value for the completion of the murder. The district court disagreed, finding that evidence confirmed that Velasquez and his co-defendant were going to

receive "something of value for being instrumental in the [murder-for-hire plot]." The court further determined Velasquez to be a career offender, also over his objection, which increased his criminal history category from IV to VI. The court varied downward to a criminal history category of III, with a corresponding sentencing range of 262–327 months. The court ordered Velasquez to serve a 120-month sentence on the murder-for-hire conviction (the statutory maximum) to run concurrently with a 262-month sentence on the cocaine-distribution conviction.

Velasquez and Cordero both appealed, and we ruled on their appeals in the same opinion. We ruled that there was sufficient evidence to convict both Cordero and Velasquez on the charge of conspiracy to commit murder for hire under 18 U.S.C. § 1958, which in turn criminalizes "us[ing] the mail or any facility of interstate or foreign commerce[] with intent that a murder be committed . . . as consideration for a promise or agreement to pay[] anything of pecuniary value." 18 U.S.C. § 1958(a). *Cordero*, 973 F.3d at 613–15. We also ruled that the conspiracy element was met because the government had shown that (1) Velasquez conspired to use an interstate facility with the intent to murder in consideration for money to be paid to the killer; (2) he knowingly and voluntarily joined the conspiracy; and (3) a member of the conspiracy performed an overt act, as required by the law. *See United States v. Burdette*, 86 F. App'x 121, 126 (6th Cir. 2004). We rejected evidentiary, sufficiency-of-evidence, and failure-to-sever challenges to their convictions. *Cordero*, 973 F.3d at 613–24.

With respect to Velasquez's sentence, we upheld the district court's application of U.S.S.G. § 2E1.4 in calculating the offense level for Velasquez's conspiracy to commit murder-for-hire conviction. We reasoned that U.S.S.G. § 2E1.4—the Guideline specifically indexed to the murder-for-hire statute, 18 U.S.C. § 1958—instructs courts to apply a base offense level of 32 or "the offense level applicable to the underlying unlawful conduct," *whichever is greater*. U.S.S.G. § 2E1.4(a). *Cordero*, 973 F.3d at 624, 626. The district court properly determined that Cordero's underlying conduct was conspiracy to commit murder, and thus rightly referred to the Guideline governing "Conspiracy or Solicitation to Commit Murder," U.S.S.G. § 2A1.5. That Guideline calls for a base offense level of 33, with a four-level increase for when "the offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder[.]" U.S.S.G. § 2A1.5(a), (b)(1). We ruled that the district court properly found the four-level

increase appropriate and assigned Velasquez an offense level of 37. We followed precedent from the First, Second, and Eighth Circuits in rejecting an argument that "[b]ecause a conviction of murder for hire already involves the provision or offer of something of pecuniary value, applying a 4-level offense enhancement for that exact same conduct pursuant to USSG §2A1.5 is redundant and improper." *Cordero*, 973 F.3d at 624–26.

We accepted, however, the government's concession that Velasquez should not have been considered a "career offender" under the sentencing guidelines, and determined that a remand was accordingly required. *Id.* at 625–26.

Finally, Velasquez argued on appeal that the district court erred by not factoring in the three-level reduction, for conspiracies whose object was not complete or almost completed under U.S.S.G. § 2X1.1(b)(2), which provides:

> If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

We determined to permit the district court to address this issue in the first instance. We explained:

> The probation office in its presentence report, which was adopted by the district court, acknowledged that conspiracy to commit murder for hire is covered by § 2X1.1, but reasoned that Velasquez could not benefit from the reduction be under 2X1.1(b) because "[t]he defendants completed the conspiracy to commit murder for hire when they engaged in a telephone conversation over state lines in which they discussed the murder for hire." The Government does not respond to Velasquez's argument with respect to the three-level reduction in § 2X1.1 and indicated at oral argument that it expects the district court to take up the issue once more on remand. Velasquez, on the other hand, has not addressed the reasons provided by the district court for denying the three-level reduction. In these circumstances, it would be unwise to decide the issue of the three-level reduction, where the legal arguments are not adequately presented. We therefore remand for the district court to consider the issue anew in recalculating Velasquez's offense level.

*Cordero*, 973 F.3d at 626–27.

On remand, the district court denied Velasquez the three-level reduction under § 2X1.1(b)(2), reasoning that Velasquez completed all the acts necessary to conspire to commission murder-for-hire, the offense underlying his conviction, in violation of 18 U.S.C. § 1958. The district court found that commission of the murder was not required to deny the three-level reduction. Instead, the district court explained that Velasquez completed the underlying substantive acts by communicating his intent to kill Goines over the phone, then traveling to Goines's house and reporting to the individual who was allegedly going to commit the murder that her was address was correct. After rejecting the § 2X1.1 reduction argument, the district court applied our ruling with respect to the career offender designation, and sentenced Velasquez to 120 months' confinement for Count 1 and 240 months confinement for Count 2, to be served concurrently. The court noted this sentence was 22 months less than Velasquez's prior sentence. Velasquez now appeals.

Prior to oral argument we requested the parties to be prepared to discuss cases from the Seventh and Ninth Circuit which held or reasoned that "§ 2X1.1 is inapplicable to offense conduct specifically covered by § 2A1.5." Moreover, during oral argument we gave Velasquez the opportunity to provide supplemental briefing on the same question, which he timely submitted after oral argument.

The district court correctly denied Velasquez a three-level reduction to the base offense level under U.S.S.G. § 2X1.1(b)(2) because, as we see it, § 2X1.1 does not apply to the criminal conduct covered by § 2A1.5. We review de novo this purely legal question. See *United States v. Susany*, 893 F.3d 364, 367 (6th Cir. 2018).

A plain reading of § 2X1.1 is that it deals with conspiracy convictions that are, in the words of its title, "Not Covered by a Specific Guideline." This is clear not only from the title, but from subsection (c), which provides that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." As we held in our previous opinion, the applicable guideline in this case is U.S.S.G. § 2A1.5 by virtue of § 2E1.4(a)(2), which refers to "the offense level applicable to the underlying unlawful conduct" if greater than 32. 973 F.3d at 624. Because U.S.S.G. § 2A1.5 in turn expressly covers conspiracy, §2X1.1 falls out of the picture.

While this reading of three interrelated sentencing guidelines may appear somewhat circuitous, it makes sense. Where the guideline for a conspiracy crime adopts the same base level the same as that for the underlying crime, it makes sense that conspiracy to commit an uncompleted crime not be punished as severely as a completed conspiracy to commit the crime. This is what § 2X1.1 provides. But such a distinction is not required when a guideline specifically addressing a *conspiracy* crime directly provides the base level, which is what § 2X1.1(c) provides. This is especially appropriate where the applicable conspiracy guideline itself provides for differing base levels depending on the extent to which the conspired crime is carried out. U.S.S.G. § 2A1.5 does just that, providing a base level of 33 for conspiracy to commit murder, raised four levels if the offense involved the offer or receipt of anything of pecuniary value, and cross-referencing to other guidelines in the case of actual death of a victim, attempted murder, or assault with intent to commit murder. Thus, because § 2X1.1 does not apply to a conspiracy conviction that is already "expressly covered by another offense guideline section," the district court was correct to deny the § 2X1.1(b) reduction.

Similar reasoning has been applied by our court, albeit briefly in unpublished opinions. In *United States v. Augarten*, 84 F. App'x 564 (6th Cir. 2003), we stated that because the underlying offense in question was "covered by a specific offense guideline, [defendant's] reliance on USSG § 2X1.1 for a sentencing modification is misplaced. . . . [T]hat section only applies when the offense of conspiracy is not covered by a specific offense guideline." *Id.* at 566. In *United States v. James*, 575 F. App'x 588 (6th Cir. 2014), with respect to attempt, we explained that because another part of the Guidelines "expressly cover[ed] the offense of attempted murder, a sentencing court must apply that section rather than § 2X1.1(b)." *Id.* at 592.

Our reasoning follows that of the Seventh Circuit in *United States v. Grzegorczyk*, 800 F.3d 402, 405 (7th Cir. 2015). The defendant in that case was convicted of using a facility of interstate commerce with intent that a murder be committed, in violation of 18 U.S.C. § 1958(a). He argued for a base level reduction by three under U.S.S.G. § 2X1.1(b)(3), which provides for a three-level decrease for solicitation "unless the person solicited to commit or aid the substantive offense completed all the acts he believed necessary for successful completion of the substantive offense . . . ." The defendant did not contest that § 2A1.5 was properly used to calculate his base-offense level. The Seventh Circuit accordingly rejected his argument, relying

on plain language of the cross-reference in § 2X1.1(c)(1), and further noting that § 2A1.5(c) already accounts for differences where the offense resulted in a death or attempted murder or assault.

There is further support for this reasoning in a 2017 unanimous en banc opinion by the Ninth Circuit. See *United States v. Simon*, 858 F.3d 1289 (9th Cir. 2017) (en banc). In that case the Ninth Circuit explained, "when some other section of the Guidelines expressly covers a specific inchoate offense—for instance, U.S.S.G. § 2A1.5, 'Conspiracy or Solicitation to Commit Murder'—the sentencing court leaves the default § 2X1.1 Guideline behind and looks to the instructions contained in the more specific section of the Guidelines." *Id.* at 1291. This was part of an extensive treatment by that court of how a district court should determine for purposes of U.S.S.G. § 2X1.1 whether another Guidelines section "expressly" covers an inchoate offense. *Id.* at 1290–98. While the Ninth Circuit court determined that the applicable guideline in that case, U.S.S.G. § 2B3.1 for "Robbery," did not expressly cover Hobbs Act robbery conspiracy, the court explicitly contrasted that guideline with U.S.S.G. § 2A1.5. *Id.* at 1291, 1294. The court also reasoned in part by noting, accurately, that Application Note 1 to § 2X1.1 actually lists some Guidelines sections that expressly cover conspiracies for purposes of § 2X1.1, giving § 2A1.5 as its first example. *Id.* at 1294.

Velasquez has presented no argument specifically contending that § 2A1.5 as a matter of interpretation can be read not to expressly cover conspiracies for purposes of § 2X1.1(c). He does, however, argue that the government forfeited the argument by not raising it below or in this court. It is regrettable that the government did not raise or even acknowledge this point until oral argument in this appeal, and government counsel at oral argument commendably expressed regret for that. To be sure, the presentence report, the district court, and the government *did* assert that §2X1.1(b) did not apply, but did so because the terms of subsection (b) were not met, not for the reason that § 2X1.1(b) simply did not apply by virtue of § 2X1.1(c).

However, on de novo review we are obliged to apply the law correctly and "in reviewing a lower court decision, we may affirm for any reason presented in the record, even if the reason was not raised below." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) (citing cases). The basis of our decision is a purely legal determination of the meaning of

Guideline language. Moreover, Velasquez was given ample time to prepare on this issue before oral argument, and subsequently given the opportunity to provide supplemental briefing after oral argument. Velasquez's argument that the court should not consider this alternative ground for affirmance is thus unavailing. In ruling on this ground, we accordingly need not address the district court's analysis nor the government's arguments regarding the application of the elements of § 2X1.1(b) to this case.

Velasquez's remaining arguments on this appeal may be disposed of in fewer words. He summarized his appellate contentions in addition to the U.S.S.G. § 2X1.1(b) argument as challenging (1) "the finding of a base level of 33 rather than 32" and (2) "the imposition of a four-point increase for the murder for hire indictment relative to U.S.S.G. 2A1.5(b)(1)."

The first contention was raised and disposed of in our prior appeal, see *Cordero*, 973 F.3d at 624–26, and our decision on that point is thus law of the case. In any event, we adopt the reasoning that we gave before.

With respect to the second contention, Velazquez made no challenge to the four-point enhancement in particular in his first appeal, as we explained in our opinion, although he had made such an argument before the court below. *See id.* at 626 n. 4. The government's brief makes a strong case that Velasquez thereby forfeited review of the second question by not arguing it in his prior appeal, citing *United States v. Adesida*, 129 F.3d 846, 849–50 (6th Cir. 1997). [U.S. Br. at 34–35.] *See also United States v. Pembrook*, __ F.3d __, ___, 2023 WL 5347108 at *7 (6th Cir. Aug. 21, 2023).

In any event, our holding that there was sufficient evidence for a jury to find that Velasquez used a facility of interstate commerce "with intent that a murder be committed . . . as consideration for a promise or agreement to pay[ ] anything of pecuniary value," *Cordero, supra*, 973 F.3d at 614–16, logically forecloses an argument that there was not sufficient evidence for the judge to conclude that Velasquez's offense "involved the offer or the receipt of anything of pecuniary value for undertaking the murder" for purposes of U.S.S.G. § 2A1.5(b)1). Indeed, in support of our conclusion that there was sufficient evidence to support Velasquez's conviction, we noted that "all indications are that Velasquez intended to enter into a scheme in which he would be paid to commit murder." *Id.* at 615 n. 2. Velasquez's brief makes the puzzling

statement that "even though this Court found . . . that there was sufficient evidence at trial to meet the 'pecuniary value' requirement for conviction, it does not follow that evidence is sufficient to provide the four-level enhancement for sentencing purpose[s]." But the standard for upholding a fact supporting conviction (enough evidence to decide beyond a reasonable doubt) is more, rather than less, demanding than that for a fact supporting a sentencing guideline determination (substantial evidence).

The judgment of the district court is affirmed.